James D. Weinberger (*jweinberger@fzlz.com*)
Laura Popp-Rosenberg (*lpopp-rosenberg@fzlz.com*)
Courtney B. Shier (*cshier@fzlz.com*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, New York 10036
Phone: (212) 813-5900

*Attorneys for Plaintiff AlphaSights Ltd*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALPHASIGHTS LTD, <br><br> Plaintiff, <br><br> v. <br><br> ALPHASENSE, INC., <br><br> Defendant. | Civil Action No. _____ <br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff AlphaSights Ltd ("Plaintiff"), by its attorneys Fross Zelnick Lehrman & Zissu, P.C., for its Complaint against Defendant AlphaSense, Inc. ("Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff is a service provider in the business research and information industry specializing in the expert network services market by providing its clients with access to knowledge derived from industry experts, including via the facilitation of one-to-one industry expert consultations and provision of other expert-based knowledge and insights. Plaintiff has been offering services under the AlphaSights brand using the ALPHASIGHTS service mark since 2008, including in the United States.

2. All of the claims asserted herein arise out of and are based on Defendant's unlawful infringement of Plaintiff's intellectual property rights in the ALPHASIGHTS brand and mark.

Defendant, also a player in the broader business research and information industry, has recently added to its business offerings by entering into the same expert network services market long served by Plaintiff, including the provision of expert consultations and expert-based knowledge. Defendant's offering of such services under the ALPHASENSE brand and mark has caused and will continue to cause confusion among consumers (specifically, Clients and Experts, each as defined below) between Plaintiff's business and offerings under the ALPHASIGHTS brand and mark and Defendant's business and offerings under the ALPHASENSE brand and mark.

3. Accordingly, Plaintiff brings this action against Defendant for trademark infringement in violation of Section 32 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114; false designation of origin and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. 1125(a)(1)(A); trademark infringement and unfair competition in violation of New York common law; and trademark dilution in violation of N.Y. General Business law § 360-*l*. In connection with these claims, Plaintiff seeks both injunctive and monetary relief.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over the subject matter of this action under Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) & (b), and under principles of supplemental jurisdiction, 28 U.S.C. § 1367(a).

5. The Court has general personal jurisdiction over Defendant pursuant to New York Civil Practice Law and Rule § 301 because, on information and belief, Defendant is headquartered in and does business in New York State.

6. Venue is proper under Section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b), in that Defendant resides in this District and a substantial part of the events giving rise to the claims herein occurred in and are directed from this District.

## THE PARTIES

7. Plaintiff is a corporation organized and existing under the laws of England and Wales having a principal place of business at Thames Court, 3rd Floor, 1 Queenhithe, London EC4V 3DX, United Kingdom.

8. On information and belief, Defendant is a Delaware corporation headquartered in New York State with an address of 24 Union Square East, 5th Floor, New York, New York 10003.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**I.      Plaintiff's Business and Intellectual Property Rights**

9. Plaintiff is a leading business research and information service provider. Specifically, Plaintiff provides its clients with direct access to industry experts as well as access to expert knowledge derived from industry experts ("Expert Network Services"), on and through its platform, including, but not limited to, one-to-one industry expert consultations and structured industry expert knowledge and insights. Plaintiff offers its Expert Network Services under the ALPHASIGHTS service mark (the "ALPHASIGHTS Mark").

10. Consumers within the Expert Network Services market consist of (i) businesses who contract, or might contract, for access to expert knowledge ("Clients") and (ii) the industry experts that share, or may share, knowledge with Clients ("Experts").

11. Plaintiff launched its Expert Network Services business in 2008. Since then, Plaintiff has grown into a global business with offices across three continents, including two in the United States (New York and San Francisco).

12. Plaintiff's business under the ALPHASIGHTS Mark has achieved considerable commercial success. To date, Plaintiff has engaged millions of Experts and has facilitated and organized more than two million consultations between Clients and Experts. The revenue from services provided to Clients based in the United States under the ALPHASIGHTS Mark is substantial. In 2024 alone, Plaintiff had global revenues in excess of $500 million.

13. Plaintiff's ALPHASIGHTS brand has become well-known for its high-quality Expert Network Services. For example, Plaintiff was recently recognized by *The Financial Times* and *Statista* as one of Europe's Long-Term Growth Champions (2024); won "Best Research Provider" in *Hedgeweek* and *Private Equity Wire's* European Credit Awards (2023); and has consistently achieved annual "Great Place To Work Certification[s]" in the U.S. and Europe.

14. Plaintiff has invested a significant amount of time, effort, and money in developing and marketing its Expert Network Services under the ALPHASIGHTS Mark. By virtue of these efforts and Plaintiff's industry-leading Client service and Expert relationships, global footprint, and consistently high growth rate, the ALPHASIGHTS Mark has acquired enormous value and has become well-known to the public as identifying and distinguishing the source of Plaintiff's Expert Network Services exclusively and uniquely. As a result, the ALPHASIGHTS Mark has come to represent extensive goodwill.

15. In addition to Plaintiff's common law rights in the ALPHASIGHTS Mark, Plaintiff owns numerous federal registrations for the ALPHASIGHTS Mark covering Expert Network Services, including the following:

    a) ALPHASIGHTS, U.S. Reg. No. 3991714, filed on November 12, 2008, registered on July 12, 2011, in International Classes 35, 36, and 41.

      b) ALPHASIGHTS, U.S. Reg. No. 7244871, filed on October 6, 2021, and registered on December 19, 2023, in International Class 9.

      c) ALPHASIGHTS, U.S. Reg. No. 7490472, filed on October 8, 2021, and registered on September 3, 2024, in International Class 42.

True and correct copies of these registrations are attached hereto as Exhibit A.

16. The above registrations are all valid, subsisting, and in full force and effect and therefore serve as prima facie evidence of the validity of the ALPHASIGHTS Mark and of Plaintiff's exclusive right to use the ALPHASIGHTS Mark in connection with the services identified therein pursuant to Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a). Additionally, above-referenced U.S. Registration No. 3991714 has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus serves as conclusive evidence of the validity of the registered mark and of Plaintiff's exclusive right to use the mark in connection with the services listed therein, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

## II.    Defendant's Wrongful Conduct

17. Defendant is a corporation that also operates in the business research and information market.

18. Upon information and belief, Defendant began offering services under the ALPHASENSE name and service mark (the "ALPHASENSE Mark") in 2011, focusing on providing customers with a curated database of public documents, such as publicly filed financial forms and news and trade journals.

19. Upon information and belief, Defendant's business offerings remained largely unchanged until 2021. Late that year, however, Defendant acquired Stream, a small company operating in the Expert Network Services market that offered access to a relatively limited library

of transcripts of interviews between Experts and investment analysts. Upon information and belief, at the time of the acquisition, Stream owned approximately 8,500 expert interview transcripts. With the acquisition, Defendant was able to add Stream's expert transcripts to its existing financial database repository, thus entering the Expert Network Services market for the first time – albeit in a very limited way. When announcing the acquisition of Stream, Defendant confirmed that the company was "enter[ing] brand-new territory."

20. Upon information and belief, Defendant began expanding its Expert Network Services offerings at the end of 2023, when it started providing a very limited offering of one-to-one Expert consultations for the first time.

21. Upon information and belief, Defendant cemented and greatly expanded its foray into Expert Network Services and specifically one-to-one Expert consultations in July 2024 with its acquisition of another company, Tegus. Tegus, a direct competitor of Plaintiff, also offered Expert Network Services, including both on-demand one-to-one Expert consultations and a large transcript library of expert consultations.

22. The acquisition of Tegus has enabled Defendant to compete in the Expert Network Services market on a completely different footing and scale than following the Stream acquisition. Upon information and belief, at the time of the acquisition, Tegus facilitated over 30,000 one-to-one Expert consultations per year; had an extensive network of Experts for such consultations; and had an expert transcript library which exceeded 100,000 transcripts (whereas, as set out above, Stream had only 8,500 transcripts when it was acquired).

23. Accordingly, following its acquisition of Tegus, Defendant now provides services in the Expert Network Services market under the ALPHASENSE Mark in direct competition to the services that Plaintiff has long offered under the ALPHASIGHTS Mark.

24. Since Defendant started offering Expert Network Services, Clients and Experts have repeatedly expressed confusion between Plaintiff and Defendant and their respective businesses and offerings. This confusion has particularly exploded following Defendant's acquisition of Tegus.

25. To date, Plaintiff has experienced *hundreds* of instances of actual confusion between it and Defendant. Examples of confusion expressed by Plaintiff's Clients and Experts include the following:

   i. During correspondence regarding potential Experts' profiles for a project, a Client asked an employee of Plaintiff to "confirm if Tegus profiles are also included in the Alphasights [sic] database since the recent acquisition."

   ii. An Expert wrote to Plaintiff complaining about a payment that was much lower than expected, but the bank information included in the Expert's email identified the payor as "AlphaSense" not "AlphaSights."

   iii. Following outreach by Plaintiff's employee, a potential Expert responded that he is "already an expert in the AlphaSense network. In fact, I just completed a consulting assignment a couple of weeks ago."

   iv. In response to an outreach email from Plaintiff's employee, a potential Expert responded: "I'm not a fan of the AlphaSense business model. I'd be happy to consult directly with the client for a referral fee. The anonymous consulting is a problem for me. I've asked your colleagues to take me off the list."

   v. A Client employee wrote to an employee of Plaintiff asking how to "set up a Tegus login." Even after Plaintiff's employee responded that, "Tegus is a separate entity from AlphaSights," the Client asked, "I thought AlpaSights [sic]

had bought Tegus? Is there anyone I can connect with that can help me create a Tegus login?"

26. In one glaring occurrence of confusion that happened very recently, one of Plaintiff's Clients wired a substantial payment (tens of thousands of dollars) to *Defendant* against an invoice issued by *Plaintiff*. Plaintiff discovered the mistake when it followed up with the Client about the overdue payment. The Client responded stating the invoice had been paid and sharing a copy of the remittance advice identifying "AlphaSense" as the payee. This example evidences double confusion: not only did the Client pay the wrong entity by mistake, it also did not realize the mistake when questioned about the overdue payment.

27. Many of the confused Clients and Experts express dissatisfaction with Defendant's services, which, given the confusion between the ALPHASIGHTS Mark and the ALPHASENSE Mark, results in both Clients and Experts having an unfavorable opinion of Plaintiff. Defendant's actions are harming Plaintiff's reputation and the goodwill of its brand.

28. Upon information and belief, the confusion between Plaintiff and Defendant experienced by Clients and Experts is the direct result of the close similarity of the parties' names and marks – ALPHASIGHTS and ALPHASENSE – and Defendant's entrance into the same Expert Network Services market in which Plaintiff has long operated.

29. Defendant's ALPHASENSE Mark is highly similar to Plaintiff's ALPHASIGHTS Mark, and Defendant is using the ALPHASENSE Mark for the identical Expert Network Services first offered by Plaintiff. Both marks start with ALPHA and add to it a dictionary term that begins with the letter S and ends in an "s" sound. Further, SIGHTS and SENSE are related in that "sight" is one of the five basic human "senses." Thus, the marks share visual, aural, and connotative similarities. Further, the marks are presented similarly in the marketplace. Both companies

capitalize the A and S of their respective mark (AlphaSights and AlphaSense), and both companies employ a similar black, sans serif font in the logo format of their respective marks.

30. Further, upon information and belief, Defendant is taking other actions in connection with its use of the ALPHASENSE Mark for Expert Network Services that exacerbate the risk of confusion between the ALPHASENSE and ALPHASIGHTS marks. For example, Defendant calls its Expert Network Services "AlphaSense Expert Insights" and in shorthand as "AS Expert Insights." In fact, one confused Expert, while complaining about not having been paid (by Defendant) for a consultation, provided Plaintiff a copy of a calendar invite sent from "AlphaSense Insights Interview" with the calendar event titled, "AS Expert Insights." Upon information and belief, the use of the term "Insights" for Defendant's Expert Network Services is aggravating the risk of confusion that already exists between ALPHASIGHTS and ALPHASENSE.

31. Defendant's use of the ALPHASENSE Mark for Expert Network Services commenced many years after Plaintiff began using the ALPHASIGHTS Mark for Expert Network Services and many years after the ALPHASIGHTS Mark was registered in the United States Patent and Trademark Office for Expert Network Services.

32. Upon information and belief, unless enjoined by this court from using the ALPHASENSE Mark for Expert Network Services, Defendant will continue its course of conduct and to wrongfully infringe upon and profit from the ALPHASIGHTS Mark and the goodwill associated with such mark.

33. In fact, Plaintiff sent a letter to Defendant in December 2024 advising Defendant that its use of the ALPHASENSE Mark for Expert Network Services violated Plaintiff's rights and sharing with Defendant some examples of actual confusion from Clients and Experts. Despite

Plaintiff advising Defendant that it would commence formal legal proceedings if Defendant did not respond to the letter by January 13, 2025, Defendant failed to respond and continues to use the ALPHASENSE Mark for Expert Network Services.

34. Plaintiff has no adequate remedy at law to redress the injuries that Defendant has caused by its conduct. Upon information and belief, Plaintiff will continue to suffer irreparable damage and possibly sustain lost profits unless and until Defendant's actions alleged above are enjoined by this Court.

35. Further, upon information and belief, Defendant's conduct will harm and continue to harm the public unless and until enjoined by this Court.

**FIRST CLAIM FOR RELIEF:**
**TRADEMARK INFRINGEMENT PURSUANT TO 15 U.S.C. § 1114**

36. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 35 as if fully set forth herein.

37. Over many years of extensive use in connection with Expert Network Services, the federally registered ALPHASIGHTS Mark has become well-known within Plaintiff's industry and to Clients and Experts. Plaintiff has established extensive goodwill by reason of the high quality of the services provided under or in connection with the ALPHASIGHTS Mark, thus immediately indicating to the public that services featuring the ALPHASIGHTS Mark come from, or are sponsored or approved by, Plaintiff.

38. Defendant is now offering under its ALPHASENSE Mark Expert Network Services identical to the services long offered by Plaintiff under its ALPHASIGHTS Mark.

39. Defendant's Expert Network Services are marketed toward the same consumers (Clients and Experts) to whom Plaintiff's services are marketed.

40. Defendant's actions described above, including but not limited to its use of the ALPHASENSE Mark in conjunction with Expert Network Services, have caused and are likely to cause confusion and mistake and to deceive potential customers and the relevant purchasing public as to affiliation, connection, or association between Plaintiff and Defendant, and/or the source, origin, affiliation, approval and/or sponsorship of Defendant's Expert Network Services. Defendant's actions are likely to confuse the public into believing that Defendant *is* Plaintiff, or that there is some affiliation, connection, or association between Defendant and Plaintiff, and or that Defendant's Expert Network Services originate from or are authorized, endorsed, approved, or sponsored by Plaintiff, thereby damaging Plaintiff's reputation, goodwill, and sales.

41. Defendant's conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42. Defendant's conduct is causing immediate and irreparable injury to Plaintiff and will continue both to damage Plaintiff and deceive the public unless and until enjoined by this Court. Plaintiff has no adequate remedy at law.

43. Upon information and belief, Defendant has received substantial revenues and profits arising out of its acts of trademark infringement to which it is not entitled, and Plaintiff has also suffered an injury in fact, and lost money or property, as a result of Defendant's acts, for which Defendant is responsible.

### SECOND CLAIM FOR RELIEF:
### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### PURSUANT TO 15 U.S.C. § 1125(a)(1)(A)

44. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 43 above as if fully set forth herein.

45. Over many years of extensive use in connection with Expert Network Services, the federally registered ALPHASIGHTS Mark has become well-known within Plaintiff's industry and to Clients and Experts. Plaintiff has established extensive goodwill by reason of the high quality of services provided under or in connection with the ALPHASIGHTS Mark, thus immediately indicating to the public that services featuring the ALPHASIGHTS Mark come from, or are sponsored or approved by, Plaintiff.

46. Defendant is now offering under its ALPHASENSE Mark Expert Network Services identical to the services long offered by Plaintiff under its ALPHASIGHTS Mark.

47. Defendant's Expert Network Services are marketed toward the same consumers (Clients and Experts) to whom Plaintiff's services are marketed.

48. Defendant's actions described above, including but not limited to its use of the ALPHASENSE Mark in conjunction with Expert Network Services, have caused and are likely to cause confusion and mistake and to deceive potential customers and the relevant purchasing public as to affiliation, connection, or association between Plaintiff and Defendant, and/or the source, origin, affiliation, approval, and/or sponsorship of Defendant's Expert Network Services. Defendant's actions are likely to confuse the public into believing that Defendant *is* Plaintiff, or that there is some affiliation, connection, or association between Defendant and Plaintiff, and or that Defendant's Expert Network Services are provided, authorized, endorsed, approved, or sponsored by Plaintiff, thereby damaging Plaintiff's reputation, goodwill, and sales.

49. Defendant's actions alleged above constitute a false designation of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which have caused, and are likely to cause, confusion, mistake, and deception in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50. Defendant's conduct is causing immediate and irreparable injury to Plaintiff and will continue both to damage Plaintiff and deceive the public unless and until enjoined by this Court. Plaintiff has no adequate remedy at law.

51. Upon information and belief, Defendant has received substantial revenues and profits arising out of its acts of unfair competition to which it is not entitled, and Plaintiff has also suffered an injury in fact, and lost money or property, as a result of Defendant's acts of unfair competition, for which Defendant is responsible.

### THIRD CLAIM FOR RELIEF: TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

52. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 51 as if fully set forth herein.

53. The aforesaid conduct of Defendant – trademark infringement, unfair competition, and false designation of origin – constitutes trademark infringement and unfair competition in violation of the common law of the State of New York.

54. Defendant's conduct is causing immediate and irreparable injury to Plaintiff and will continue both to damage Plaintiff and deceive the public until enjoined by this Court. Plaintiff has no adequate remedy at law.

55. Upon information and belief, Defendant has received substantial revenues and profits arising out of its acts of unfair competition to which it is not entitled, and Plaintiff has also suffered an injury in fact, and lost money or property as a result of Defendant's acts of unfair competition, for which Defendant is responsible.

**FOURTH CLAIM FOR RELIEF:**
**TRADEMARK DILUTION PURSUANT TO**
**<u>N.Y. GENERAL BUSINESS LAW § 360-*l*</u>**

56.  Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 55 as if fully set forth herein.

57.  Plaintiff's ALPHASIGHTS Mark is inherently distinctive. Further, through prominent and continuous use in commerce, including commerce within the State of New York, Plaintiff's ALPHASIGHTS Mark has acquired distinctiveness. The distinctive ALPHASIGHTS Mark exclusively identifies Plaintiff, its business, and its services.

58.  Defendant's ALPHASENSE Mark is substantially similar to Plaintiff's ALPHASIGHTS Mark.

59.  Defendant's use of the ALPHASENSE Mark in connection with Expert Network Services has diluted the distinctiveness of Plaintiff's ALPHASIGHTS Mark and has caused a likelihood of harm to Plaintiff's business reputation in violation of New York General Business Law § 360-*l*.

60.  Defendant, through its unauthorized conduct described herein, has been unjustly enriched and Plaintiff has been damaged.

61.  Unless enjoined by this Court, Defendant will continue to be unjustly enriched at Plaintiff's expense.

62.  Defendant's conduct described herein has caused and is causing immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff's business reputation and deceive the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

A.   Entering judgment for Plaintiff on each of its claims.

B.   Directing that Defendant, its officers, directors, agents, representatives, successors, or assigns, and all persons acting in concert or in participation with it, be immediately and permanently enjoined from:

   i.   infringing the ALPHASIGHTS Mark;

   ii.   diluting the ALPHASIGHTS Mark;

   iii.   taking any action that has the purpose or effect of causing confusion or mistake or deceiving potential customers and the relevant purchasing public as to the origin, sponsorship, or affiliation of its business or services;

   iv.   taking any action that has the purpose or effect of diluting the distinctiveness of the ALPHASIGHTS Mark;

   v.   using the ALPHASIGHTS Mark or any derivation or colorable imitation thereof, or any name or mark that is confusingly similar thereto ("Prohibited Marks"), in connection with Expert Network Services;

   vi.   seeking to register any of the Prohibited Marks or any derivation or colorable imitation thereof, or any name or mark that is confusingly similar thereto in connection with Expert Network Services;

   vii.   making or employing any other commercial use of any of the Prohibited Marks in connection with Expert Network Services;

   viii.   making or displaying any statement or representation that is likely to lead the public or the industry to believe that Defendant's Expert Network Services are in any manner

associated or affiliated with or approved, endorsed, licensed, sponsored, authorized, or franchised by or are otherwise connected with Plaintiff;

       ix.    using any other false designation of origin or any other thing calculated or likely to cause confusion or mistake in the mind of the industry or public or to deceive the industry or public into believing that Defendant's Expert Network Services are in any way sponsored, licensed, endorsed, authorized by, or affiliated or connected with Plaintiff, or originate from Plaintiff;

       x.    doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the Expert Network Services promoted, offered, or sponsored by Defendant emanate from or originate with Plaintiff, or are somehow sponsored, licensed, endorsed, authorized by, or affiliated or connected with Plaintiff, or originate from Plaintiff;

       xi.    engaging in any other activity constituting unfair competition with Plaintiff;

       xii.    aiding, assisting, or abetting any other party in doing any act prohibited by sub-paragraphs (i) through (xi) above.

    C.    Directing that Defendant deliver up to Plaintiff's attorneys for destruction all promotional and marketing materials, advertisements, and other materials (a) currently in its possession or under its control or (b) recalled by Defendant pursuant to any order of the Court or otherwise, incorporating, featuring, or bearing the Prohibited Marks or any other simulation, reproduction, copy, or colorable imitation thereof, and connected with Expert Network Services.

    D.    Directing that Defendant file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with all of the above.

16

E. Awarding Plaintiff such damages it has sustained or will sustain by reason of Defendant's acts of trademark infringement, unfair competition, false designation of origin, and dilution, including awarding Defendant's profits as damages as appropriate, and that such sums be trebled pursuant to 15 U.S.C. § 1117.

F. An accounting of all gains, profits, property, and other advantages derived by Defendant on account of the unlawful acts complained of herein pursuant to 15 U.S.C. § 1117 and/or any other applicable federal statue or New York state and common law.

G. Awarding Plaintiff all other recoverable gains, property, and advantages derived by Defendant from its unlawful conduct.

H. Awarding Plaintiff punitive damages as allowed under all applicable federal statutes and New York state and common law.

I. Awarding to Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees, pursuant to 15 U.S.C. §1117(a) and/or any applicable New York state or common law.

J. Awarding Plaintiff interest, including pre-judgment interest on the foregoing sums.

K. Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury in this action.

Dated: New York, New York
      January 16, 2025

Respectfully submitted,

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____
    James D. Weinberger (*jweinberger@fzlz.com*)
    Laura Popp-Rosenberg (*lpopp-rosenberg@fzlz.com*)
    Courtney B. Shier (*cshier@fzlz.com*)
151 West 42nd Street, 17th Floor
New York, New York 10036
Phone: (212) 813-5900

*Attorneys for Plaintiff AlphaSights Ltd*