**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALPHASIGHTS LTD,<br><br>Plaintiff,<br><br>v.<br><br>ALPHASENSE, INC.,<br><br>Defendant. | **Case No. 1:25-cv-00479-LLS** |

**ALPHASENSE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AND FOURTH CLAIMS FOR RELIEF FOR FAILURE TO STATE A CLAIM**

**ARNOLD & PORTER KAYE SCHOLER LLP**

Dori Ann Hanswirth
Theresa M. House
250 West 55th Street
New York, NY 10019-9710
Tel.: (212) 836-8000

Michael Kientzle
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 942-5000

*Attorneys for AlphaSense, Inc.*

February 28, 2025

# TABLE OF CONTENTS

**Page**


INTRODUCTION AND FACTUAL BACKGROUND .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 3

1. The Complaint Fails to State a Claim for Unfair Competition Under New York Common Law Because There Is No Basis to Claim That AlphaSense Acted in "Bad Faith." .......... 3

2. Plaintiff's Claim for Trademark Dilution Under New York General Business Law § 360-*l* Fails as a Matter of Law Because Plaintiff's Mark Is Not Extremely Strong. .......... 4

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease and Related Disorders Assoc.*,
No. 10 Civ. 3314, 2018 WL 2084168 (S.D.N.Y. May 1, 2018)....8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....2

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
973 F.2d 1033 (2d Cir. 1992)....4, 6

*Chavez v. British Broad. Corp.*,
No. 17cv9572, 2019 WL 2250446 (S.D.N.Y. May 23, 2019)....10

*Dessert Beauty, Inc. v. Fox*,
568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008)....3

*Empresa Cubana del Tabaco v. Culbro Corp.*,
399 F.3d 462, 485 (2d Cir. 2005)....3

*In re Bayer Aktiengesellschaft*,
488 F.3d 960 (Fed. Cir. 2007)....9

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millenium Sports, S.L.U.*,
797 F.3d 1363 (Fed. Cir. 2015)....6, 7

*Lopez v. Nike, Inc.*,
20-CV-905, 2021 WL 128574 (S.D.N.Y. Jan. 14, 2021)....6

*Malaco Leaf, AB v. Promotion in Motion, Inc.*,
287 F. Supp. 2d 355 (S.D.N.Y. 2003)....4

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
875 F.2d 1026 (2d Cir. 1989)....4, 5, 9

*Moshik Nadav Typography LLC v. Banana Republic, LLC*,
No. 20-CV-8325, 2022 WL 624072 (S.D.N.Y. Mar. 2, 2022)....3

*Paddington Corp. v. Attiki Importers & Distributors, Inc.*,
996 F.2d 577 (2d Cir. 1993)....3

*PK Music Performance, Inc. v. Timberlake*,
No. 16-CV-1215, 2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018)....................................6

*Pulse Creations, Inc. v. Vesture Grp.*,
154 F. Supp. 3d 48 (S.D.N.Y. 2015)....................................................................3

*RiseandShine Corp. v. PepsiCo, Inc.*,
41 F.4th 112 (2d Cir. 2022) ...........................................................................5, 6

*Sally Gee, Inc. v. Myra Hogan, Inc.*,
699 F.2d 621 (2d Cir. 1983)...............................................................................4

*Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*,
521 F. Supp. 3d 222 (E.D.N.Y. 2021) ...................................................................4

*Sly Magazine, LLC v. Weider Publications L.L.C.*,
529 F. Supp. 2d 425 (S.D.N.Y. 2007)..................................................................4, 8

*SMJ Grp., Inc. v. 417 Lafayette Restaurant LLC*,
No. 06 Civ. 1774, 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) .................................9

*Strange Music, Inc. v. Strange Music, Inc.*,
326 F. Supp. 2d 481 (S.D.N.Y. 2004)....................................................................5

*Woodstock Ventures LC v. Woodstock Roots, LLC*,
387 F. Supp. 3d 306 (S.D.N.Y. 2019)....................................................................5

*Yemeni-Am. Ass'n, Corp. v. Alsaede*,
81 Misc. 3d 1235(A), 202 N.Y.S.3d 921 (N.Y. Sup. Ct. 2024)...............................4, 5

**Statutes**

New York General Business Law § 360-*l* .......................................................1, 2, 4, 10

**Other Authorities**

Federal Rule of Civil Procedure Rule 12(b)(6).......................................................2

Restatement (Third) of Unfair Competition § 25 cmt. e (Am. L. Inst. 1995).....................5

## INTRODUCTION AND FACTUAL BACKGROUND

Defendant AlphaSense, Inc. ("AlphaSense") operates one of the world's leading financial research platforms. Over the course of more than a decade, top companies across a range of industries—including 85 percent of the S&P 100—have turned to AlphaSense to find the information they need to make investment decisions. As a result of its extensive sales and promotion of its services under the ALPHASENSE trademark, AlphaSense has developed substantial, valuable and exclusive rights in ALPHASENSE. AlphaSense owns an incontestable federal trademark registration for its ALPHASENSE mark[1], which it has used for over ten years.

Long after AlphaSense adopted its ALPHASENSE mark, and just days before the Christmas holiday, U.K.-based Plaintiff AlphaSights, Ltd ("Plaintiff") sent AlphaSense a cease-and-desist letter ("Letter"). In the Letter, Plaintiff argued for the first time that AlphaSense's use of its longstanding ALPHASENSE trademark in connection with "Expert Network Services" infringed Plaintiff's rights in ALPHASIGHTS. On January 16, 2025, AlphaSense responded to the Letter, explaining that December (AlphaSense's fiscal year end) had been very busy for AlphaSense, and requesting an extension of time to evaluate and respond accordingly. Plaintiff was unwilling to engage. On that same day, rather than granting the extension—indeed, before providing any written response whatsoever—Plaintiff commenced this lawsuit.

Plaintiff's Complaint contains a grab-bag of trademark and trademark-related claims, including trademark infringement claims under federal and New York law; unfair competition under federal and New York law; and dilution under New York General Business Law § 360-*l*. AlphaSense will demonstrate that each one of these claims is meritless. However, AlphaSense

[1] Declaration of Michael Kientzle in Support of AlphaSense, Inc.'s Motion to Dismiss Plaintiff's Third and Fourth Claims for Relief for Failure to State a Claim ("Kientzle Decl.") ¶ 2, Ex. A (U.S. Reg. No. 4,461,418 for ALPHASENSE).

recognizes that Plaintiff's federal and state trademark infringement claims present numerous issues, including with respect to their timeliness, that may be difficult to resolve without discovery, and accordingly does not challenge those claims at the pleading stage.

The same cannot be said for Plaintiff's claims for unfair competition under New York common law[2] and dilution under New York General Business Law § 360-*l*. Compl. ¶¶ 52-62. Both of these claims are facially deficient and must be dismissed. With respect to its New York common law unfair competition claim, Plaintiff fails entirely to plead the necessary element of bad faith. As for its dilution claim, Plaintiff fails to provide any non-conclusory allegations concerning the strength of its ALPHASIGHTS trademark. That is a critical failure, because New York's anti-dilution statute only protects "extremely strong" marks, *i.e.*, marks that are well-recognized by the general public. Given these facial deficiencies, AlphaSense moves the Court for an order dismissing Plaintiff's claims for unfair competition under New York common law and dilution under New York General Business Law § 360-*l*.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The facts alleged, if true, must give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

[2] Plaintiff styles its Third Claim for Relief as "Trademark Infringement and Unfair Competition Under New York Common Law." AlphaSense does not seek to dismiss the portion of Plaintiff's claim that asserts trademark infringement under New York common law at this time.

## ARGUMENT

### 1. The Complaint Fails to State a Claim for Unfair Competition Under New York Common Law Because There Is No Basis to Claim That AlphaSense Acted in "Bad Faith."

To state a claim for unfair competition under New York common law, a plaintiff must plausibly allege that the defendant acted in bad faith. *See, e.g.*, *Pulse Creations, Inc. v. Vesture Grp.*, 154 F. Supp. 3d 48, 57 (S.D.N.Y. 2015) ("a party asserting a claim for unfair competition under New York law must also allege bad faith on the part of the defendant.") (quoting *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005)). Here, Plaintiff's Complaint does not even include the words "bad faith," much less set forth facts that give rise to a plausible inference of it.

The Complaint contains a reference to AlphaSense's continued use of its ALPHASENSE mark following receipt of the Letter, but Plaintiff does not attempt to claim that this is evidence of bad faith—with good reason. Compl. ¶ 33. The mere fact that AlphaSense continued to use its longstanding mark following receipt of the letter does not suffice to allege bad faith. The "'failure to completely abandon the use after receiving a cease-and-desist letter is insufficient,' standing alone, 'to support an allegation of bad faith.'" *See Moshik Nadav Typography LLC v. Banana Republic, LLC*, No. 20-CV-8325, 2022 WL 624072, at *2 (S.D.N.Y. Mar. 2, 2022) (quoting *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008)). That is particularly true where, as discussed above, Plaintiff filed its Complaint less than one month after sending its Letter, after refusing to allow time for AlphaSense to investigate or discuss Plaintiff's concerns.

Indeed, with respect to the bad faith requirement, the Complaint is most notable for what it does *not* allege. This is not a case where the plaintiff claims that the defendant adopted its mark with the intent of trading on Plaintiff's goodwill. *See, e.g., Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993) (intentional copying of the plaintiff's

mark indicates bad faith). To the contrary, as the Complaint recognizes, AlphaSense began using its ALPHASENSE mark over 14 years ago, and the parties co-existed in their use of their respective marks without objection until December 2024. Compl. ¶¶ 18, 24. Nor does Plaintiff allege that AlphaSense concealed its activities, or attempted to deceive Plaintiff with respect to its use of the ALPHASENSE mark. *Shandong Shinho Food Indus. Co., Ltd. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 251-52 (E.D.N.Y. 2021) (allegations of deception and concealment sufficient to allege bad faith).

In short, this is not a case where bad faith is an issue or even alleged to be an issue, and therefore Plaintiff's claim for unfair competition under New York common law must be dismissed.

**2. Plaintiff's Claim for Trademark Dilution Under New York General Business Law § 360-*l* Fails as a Matter of Law Because Plaintiff's Mark Is Not Extremely Strong.**

Plaintiff's claim for dilution under New York General Business Law § 360-*l* also must be dismissed because the Complaint fails to allege that the New York anti-dilution statute applies to the ALPHASIGHTS mark. New York's anti-dilution law "only protects 'extremely strong marks.'" *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 367 (S.D.N.Y. 2003); *see also Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir. 1983) (predecessor to N.Y. General Business Law § 360-*l* "protects only extremely strong marks"[3]); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992) (same); *Yemeni-Am. Ass'n, Corp. v. Alsaede*, 81 Misc. 3d 1235(A), 202 N.Y.S.3d 921 (N.Y. Sup. Ct. 2024) (N.Y. General Business

---

[3] Like N.Y. General Business Law § 360-*l*, the prior New York anti-dilution statute protected against "dilution of the distinctive quality of a mark." *See Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1027 (2d Cir. 1989) (quoting text of N.Y. General Business Law § 368-d). Numerous courts applying N.Y. General Business Law § 360-*l* rely upon decisions interpreting the prior version of the anti-dilution statute. *See, e.g.*, *Sly Magazine, LLC v. Weider Publications L.L.C.*, 529 F. Supp. 2d 425, 443-44 (S.D.N.Y. 2007) *aff'd* 346 F. App'x 721 (2d Cir. 2009).

Law § 360-*l* protects "*extremely strong marks*") (emphasis original) (internal citation and quotation marks omitted).

To determine whether a mark is "extremely strong," courts look to the same factors that are examined when assessing the strength of a mark for a trademark infringement claim. *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 496 (S.D.N.Y. 2004) (citing *Mead Data Cent., Inc.*, 875 F.2d at 1030). For trademark infringement purposes, a mark may be "conceptually strong" because it is inherently distinctive, and/or "commercially strong," because it is distinctive in the marketplace. *See, e.g.*, *Woodstock Ventures LC v. Woodstock Roots, LLC*, 387 F. Supp. 3d 306, 315 (S.D.N.Y. 2019).

Here, the Complaint fails to provide any non-conclusory allegations concerning the conceptual or commercial strength of ALPHASIGHTS in the United States. Instead, the Complaint merely alleges that ALPHASIGHTS is "inherently distinctive," or has "acquired distinctiveness" through use. Compl. ¶ 57. In so pleading, Plaintiff mistakes the standard for showing that a mark is protectible *at all* and the standard for showing that a mark is extremely strong and therefore able to benefit from New York's anti-dilution law. *Strange Music, Inc.*, 326 F. Supp. 2d at 496 ("[T]o merit protection under the New York dilution statute, a plaintiff cannot simply show that she possesses trademark rights.") (internal citation and quotation marks omitted); Restatement (Third) of Unfair Competition § 25 cmt. e (Am. L. Inst. 1995) ("[T]he majority of courts recognize that a higher degree of distinctiveness is required to support a dilution claim than is required to establish rights in a mark for purpose of a traditional infringement claim.").

The conceptual strength of a mark is ordinarily evaluated along a spectrum of distinctiveness, from the strongest marks (arbitrary and fanciful) to those terms that are not trademarks at all (generic). *See, e.g.*, *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 120 (2d

Cir. 2022). Here, however, Plaintiff completely fails to allege where its mark falls upon this spectrum, much less to provide specific facts in support of a conclusion regarding the strength of its mark.

Nor could it. The ALPHASIGHTS mark describes the "purpose or utility" of Plaintiff's services, and is therefore a conceptually weak descriptive mark. *Bristol-Myers Squibb Co.*, 973 F.2d at 1040-41. In finance, "alpha" refers to "an investment strategy's ability to beat the market."[4] Therefore, when combined with the term "sights," ALPHASIGHTS describes the "purpose or utility" of Plaintiff's services—namely, to provide information that helps clients perceive market-beating investment strategies—rendering it a weak mark.[5]

Many other financial service providers have also registered ALPHA-formative marks for use in connection with providing investment advice and/or investment software. These third-party registrations[6] for similar marks in connection with similar services further demonstrate that ALPHASIGHTS is not "extremely strong," as required to state a claim for dilution under New York law, but is instead "relatively weak and entitled only to a narrow scope of protection." *Jack*

---

[4] *See* Kientzle Decl. ¶ 3, Ex. B (James Chen, *Alpha: Its Meaning in Investing, With Examples*, Investopedia (Feb. 23, 2024), www.investopedia.com/terms/a/alpha.asp); *see also Lopez v. Nike, Inc.*, No. 20-CV-905, 2021 WL 128574, at *6 (S.D.N.Y. Jan. 14, 2021) (courts may take judicial notice of dictionary and encyclopedia entries).

[5] Plaintiff's own description of its services confirms this understanding. On its website, Plaintiff explains that its services help clients to "[a]chieve alpha" and "[a]mplify your investment returns using our primary research platform." Kientzle Decl. ¶ 4, Ex. C (AlphaSights, www.alphasights.com/hedge-funds/ (last visited Feb. 28, 2025)). Prominent financial institutions such as M&T Bank use "alpha" in a similar fashion. *Id.* ¶ 5, Ex. D(M&T Bank, www.mtb.com/wilmington-advisors/products-and-services/what-is-alpha-in-investing (last visited Feb. 28, 2025)). The Court may take judicial notice of "information contained on websites where the authenticity of the site has not been questioned." *PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215, 2018 WL 4759737, at *4 (S.D.N.Y. Sept. 30, 2018) (internal quotation omitted).

[6] The Court may take judicial notice of trademark registrations and their content. *Lopez*, 2021 WL 128574, at *6.

*Wolfskin Ausrustung fur Draussen GmbH & Co. KGAA v. New Millenium Sports, S.L.U.*, 797 F.3d 1363, 1373-74 (Fed. Cir. 2015) (internal quotation omitted). For example:

- **ADVISOR'S ALPHA**, U.S. Reg. No. 6,080,178 for "Providing online, non-downloadable computer software for use in providing business and financial analysis in the fields of investing, investment management, finance, financial planning, retirement planning, risk management, and financial portfolio management."

- **ALPHACALC**, U.S. Reg. No. 6,140,351 for "Software as a service (SAAS) services featuring software for performing financial and human capital calculations, modeling business performance across key financial and human capital (people) metrics, and comparing user-entered data to industry benchmarks."

- **ALPHACLONE**, U.S. Reg. No. 6,090,900 for "Investment advisory services; Capital investment services."

- **ALPHACORE**, U.S. Reg. No. 4,831,383 for "Financial advice; Financial advice and consultancy services; Financial advisory and consultancy services; Financial analyses; Financial analysis and consultation; Financial analysis and research services; Financial and investment services, namely, asset and investment acquisition, consultation, advisory and development; Financial asset management; Financial consultancy; Financial consultation; Financial consulting; Financial investment analysis and stock research; Financial management; Financial planning; Financial planning and investment advisory services; Financial planning consultation; Financial portfolio analysis services; Financial portfolio management."

- **ALPHAFRONTIER**, U.S. Reg. No. 3,784,837 for "Application service provider (ASP) featuring software in the field of hedge fund investing."

- **ALPHAFUSE**, U.S. Reg. No. 6,048,164 for "Software as a service (SAAS) services featuring software for data management for use by financial services companies."

- **ALPHALYNX,** U.S. Reg. No. 6,474,214 for "Providing financial information via a website for use in evaluating, analyzing and developing strategies for investment portfolios, assets and securities."

- **ALPHALYTICS**, U.S. Reg. No. 6,471,532 for "Rendering advice to financial institutions, namely, providing rankings of financial asset managers and analyzing those rankings."

- **ALPHASCOPE**, U.S. Reg. No. 4,436,499 for "Financial information provided by electroinic [*sic*] means."

- **ALPHA THEORY**, U.S. Reg. No. 5,112,316 for "Software as a service (SAAS) featuring software for determining asset allocation, risk management and the analysis and optimization of financial portfolios."
- **FP ALPHA,** U.S. Reg. No. 6,170,079 for "Providing on-line non-downloadable software for providing an analysis and proposed recommendation in the fields of tax, estate, insurance, benefits, lending, banking, retirement planning, finance, identity security, and customer profiling using artificial intelligence methods, natural language processing, natural language understanding, dialog systems, or predictive assistance technologies."
- **OPTION ALPHA**, U.S. Reg. No. 7,297,203 for "Software as a service (SAAS) featuring software for providing an algorithmic trading platform, and that functions as automated investment management software, and enables users to participate in a quantitative trading community."

Kientzle Decl. ¶ 6, Ex. E.

Plaintiff's bare allegation that its mark is "inherently distinctive" is a legal conclusion that is not entitled to credit on a motion to dismiss. Furthermore, such an allegation, even if it were adequately pled, is not an allegation that ALPHASIGHTS is "extremely strong" for purposes of New York's anti-dilution law. *Sly Magazine, LLC*, 529 F. Supp. 2d at 443-44 ("Although plaintiff['s] mark is inherently distinctive, as explained earlier, it is nonetheless a weak mark and does not merit protection under § 360-[*l*].").[7]

Likewise, the Complaint's conclusory allegation that the ALPHASIGHTS mark "has become well-known to the public as identifying and distinguishing the source of Plaintiff's Expert Network Services exclusively and uniquely" fails to allege plausibly that ALPHASIGHTS is commercially strong, or strong at all in the U.S. or New York. *See* Compl. ¶ 14. The Complaint does not contain any allegations regarding the proportion of U.S. or New York consumers that

[7] Nor does the ownership of federal trademark registrations alone suffice to state a claim for dilution under New York law. *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease and Related Disorders Assoc.*, No. 10 Civ. 3314, 2018 WL 2084168, at *7-*8 (S.D.N.Y. May 1, 2018) (dismissing New York state dilution claim notwithstanding plaintiff's ownership of federal trademark registrations).

recognize its mark or otherwise provide factual support for Plaintiff's claim that its mark is "well-known to the public." At most, the Complaint cites global revenue figures, without attributing any portion to the U.S. or New York, and foreign accolades, such as its recognition as one of "Europe's Long-Term Growth Champions" in *The Financial Times*. Compl. ¶¶ 12-13. Such allegations of sales or public recognition *outside the United States* are legally and factually irrelevant to consumer perception of ALPHASIGHTS in the United States. *See Mead Data Cent., Inc.*, 875 F.2d at 1030 (explaining that "the fact that a mark has selling power in a limited geographical or commercial area" does not mean that it is strong among the general public"); *see also In re Bayer Aktiengesellschaft*, 488 F.3d 960, 969 (Fed. Cir. 2007) ("Evidence of registration in other countries is not legally or factually relevant to potential consumer perception of Bayer's analgesic goods in the United States.").

Judges in the Southern District of New York have dismissed New York anti-dilution claims where the plaintiffs failed to provide non-conclusory allegations of strength. For example, in *SMJ Grp., Inc. v. 417 Lafayette Restaurant LLC*, the Court dismissed plaintiff's New York state dilution claim notwithstanding the plaintiffs' allegations that their marks were "widely recognized by customers as being associated with the high quality dining experience offered by plaintiffs" or that they had "become uniquely associated with" the plaintiffs' restaurants. No. 06 Civ. 1774, 2006 WL 2516519, at *4 (S.D.N.Y. Aug. 30, 2006) (internal quotation marks omitted). The Court explained that "[n]either continuous use of a mark nor a high volume of sales is sufficient to establish a claim for dilution," and instead plaintiffs were required to allege that their marks were "sufficiently distinctive and famous in the eyes of the general public." *Id.* "Plaintiffs allegation that the marks are recognized by *customers* of the restaurant does not establish the requisite level of fame or distinctiveness." *Id.*

Similarly, the Court in *Chavez v. British Broad. Corp.*, dismissed the plaintiff's New York state dilution claim where the plaintiff had merely provided conclusory allegations that, "because of his long, continuous and exclusive use of the mark . . . the mark [has] gained wide public acceptance and association with [the] plaintiff." No. 17cv9572, 2019 WL 2250446, at *6 (S.D.N.Y. May 23, 2019) (internal quotation marks omitted). Indeed, the Court dismissed this claim notwithstanding the fact that the plaintiff was representing himself *pro se*, and therefore it had accorded his complaint "special solicitude . . . by construing [his] pleadings liberally to raise the strongest arguments they suggest." *Id.* at *2 (internal citation and quotation marks omitted).

Therefore, because the Plaintiff has failed to plausibly allege that its ALPHASIGHTS mark is "extremely strong," the Court must dismiss Plaintiff's claim for dilution under New York law.

## CONCLUSION

As set forth above, Plaintiff's claim for unfair competition under New York common law should be dismissed because Plaintiff fails to allege bad faith, and Plaintiff's claim for trademark dilution under New York General Business Law § 360-*l* should be dismissed because Plaintiff fails to plausibly allege that its mark is extremely strong.

Respectfully submitted,

By: /s/ Dori Ann Hanswirth

Dori Ann Hanswirth
Theresa M. House
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
Tel.: (212) 836-8000
Dori.Hanswirth@arnoldporter.com
Theresa.House@arnoldporter.com

Michael Kientzle
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 942-5000
Michael.Kientzle@arnoldporter.com
*Attorneys for AlphaSense, Inc.*