**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALPHASIGHTS LTD,<br><br>Plaintiff,<br><br>v.<br><br>ALPHASENSE, INC.,<br><br>Defendant. | **Case No. 1:25-cv-00479-LLS** |

**ALPHASENSE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AND FOURTH CLAIMS FOR RELIEF OF PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**


**ARNOLD & PORTER KAYE SCHOLER LLP**

Dori Ann Hanswirth
Theresa M. House
250 West 55th Street
New York, NY 10019-9710
Tel.: (212) 836-8000

Michael Kientzle
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 942-5000

*Attorneys for AlphaSense, Inc.*


March 24, 2025

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND FACTUAL BACKGROUND ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 3

1. The FAC Fails to State a Claim for Unfair Competition Under New York Common Law Because There Are No Plausible Allegations That AlphaSense Acted in "Bad Faith." ..... 3

2. Plaintiff's Claim for Trademark Dilution Under New York General Business Law § 360-*l* Fails as a Matter of Law Because Plaintiff's Mark Is Not Extremely Strong. ..... 7

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease and Related Disorders Assoc.*,
No. 10 Civ. 3314, 2018 WL 2084168 (S.D.N.Y. May 1, 2018)....11

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010)....3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....3

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
973 F.2d 1033 (2d Cir. 1992)....7, 8

*Brooklyn Brewery Corp. v. Brooklyn Brew Shop*,
17 F.4th 129 (Fed. Cir. 2021)....8

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018)....3, 4

*Dessert Beauty, Inc. v. Fox*,
568 F. Supp. 2d 416 (S.D.NY. 2008), *aff'd,* 329 F. App'x 333 (2d Cir. 2009)....5

*Draussen GmbH & Co. KGAA v. New Millenium Sports, S.L.U.*,
797 F.3d 1363 (Fed. Cir. 2015)....9

*Empresa Cubana del Tabaco v. Culbro Corp.*,
399 F.3d 462 (2d Cir. 2005)....4

*In re Bayer Aktiengesellschaft*,
488 F.3d 960 (Fed. Cir. 2007)....11

*Lopez v. Nike, Inc.*,
No. 20-CV-905, 2021 WL 128574 (S.D.N.Y. Jan. 14, 2021)....8, 9

*Malaco Leaf, AB v. Promotion in Motion, Inc.*,
287 F. Supp. 2d 355 (S.D.N.Y. 2003)....7

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
875 F.2d 1026 (2d Cir. 1989)....7, 11

*My Mavens, LLC v. Grubhub, Inc.*,
20 Civ. 4657, 2023 WL 5237519 (S.D.N.Y. Aug. 14, 2023)....4, 5

*PK Music Performance, Inc. v. Timberlake*,
No. 16-CV-1215, 2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018)............................................6

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
507 F.3d 117 (2d Cir. 2007)..................................................................................3, 8

*Pulse Creations, Inc. v. Vesture Grp.*,
154 F. Supp. 3d 48 (S.D.N.Y. 2015)....................................................................3, 4

*Sally Gee, Inc. v. Myra Hogan, Inc.*,
699 F.2d 621 (2d Cir. 1983)........................................................................................7

*Salu v. Miranda*,
830 Fed. App'x 341 (2d Cir. 2020)..............................................................................3

*SEC v. Thompson*,
238 F. Supp. 3d 575 (S.D.N.Y. 2017)..........................................................................4

*Sly Magazine, LLC v. Weider Publications L.L.C.*,
529 F. Supp. 2d 425 (S.D.N.Y. 2007), *aff'd,* 346 F. App'x 721 (2d Cir. 2009).................7, 10

*SMJ Grp., Inc. v. 417 Lafayette Restaurant LLC*,
No. 06 Civ. 1774, 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) ....................................12, 13

*Strange Music, Inc. v. Strange Music, Inc.*,
326 F. Supp. 2d 481 (S.D.N.Y. 2004)..........................................................................7

*Tiffany & Co. v. Costco Wholesale Corp.*,
971 F.3d 74 (2d Cir. 2020)..........................................................................................4

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992)..................................................................................................10

*Woodstock Ventures LC v. Woodstock Roots, LLC*,
387 F. Supp. 3d 306 (S.D.N.Y. 2019)..........................................................................7

*Yemeni-Am. Ass'n, Corp. v. Alsaede*,
81 Misc. 3d 1235(A), 202 N.Y.S.3d 921 (N.Y. Sup. Ct. 2024) ...............................................7

**Statutes**

N.Y. General Business Law § 368-d ..........................................................................7

N.Y. General Business Law § 360-*l* ..................................................................1, 2, 7, 13

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .....................................................................3

## INTRODUCTION AND FACTUAL BACKGROUND

Defendant AlphaSense, Inc. ("AlphaSense") operates one of the world's leading financial research platforms. Over the course of more than a decade, top companies across a range of industries—including 85 percent of the S&P 100—have turned to AlphaSense to find the information they need to make investment decisions. As a result of extensive sales and promotion of its services under the ALPHASENSE trademark, AlphaSense has developed substantial, valuable and exclusive rights in ALPHASENSE. AlphaSense owns an incontestable federal trademark registration for its ALPHASENSE mark[1], which it has used for over ten years.

U.K.-based Plaintiff AlphaSights, Ltd ("Plaintiff") did not raise any concerns regarding the ALPHASENSE mark until December 2024, when Plaintiff sent AlphaSense a cease-and-desist letter ("Letter"). In the Letter, Plaintiff argued for the first time that AlphaSense's use of the ALPHASENSE trademark in connection with "Expert Network Services" infringed Plaintiff's rights in ALPHASIGHTS. On January 16, 2025, before the parties could address the concerns Plaintiff raised in the Letter, Plaintiff filed this lawsuit. On February 28, AlphaSense moved to dismiss Plaintiff's Complaint in part and, in lieu of opposing AlphaSense's motion, Plaintiff filed its First Amended Complaint ("FAC") on March 10.

Plaintiff's FAC contains the same grab-bag of trademark and trademark-related claims that Plaintiff raised in its initial Complaint, including trademark infringement claims under federal and New York law; unfair competition under federal and New York law; and dilution under New York General Business Law § 360-*l*. AlphaSense will demonstrate that each one of these claims is meritless. However, AlphaSense recognizes that Plaintiff's federal and state trademark

[1] Declaration of Michael Kientzle in Support of AlphaSense, Inc.'s Motion to Dismiss the Third and Fourth Claims for Relief of Plaintiff's First Amended Complaint for Failure to State a Claim ("Kientzle Decl.") ¶ 2, Ex. A (U.S. Reg. No. 4,461,418 for ALPHASENSE).

infringement claims present numerous issues, including with respect to their timeliness, that may be difficult to resolve without discovery, and accordingly does not challenge those claims at the pleading stage.

The same cannot be said for Plaintiff's claims for unfair competition under New York common law[2] and dilution under New York General Business Law § 360-*l*. FAC ¶¶ 59-71. Both of these claims are facially deficient and must be dismissed. With respect to its New York common law unfair competition claim, Plaintiff initially failed entirely to plead the necessary element of bad faith. In the FAC, Plaintiff does little better. While Plaintiff now alleges "bad faith," it does so in a conclusory fashion and without any supporting factual allegations that lend plausibility to Plaintiff's claim. As for its dilution claim, Plaintiff likewise failed to provide any non-conclusory allegations concerning the strength of the ALPHASIGHTS trademark in its initial Complaint. In its FAC, Plaintiff now sets forth additional legal conclusions but no new factual allegations regarding the strength of its mark in the United States or New York, and therefore fails to raise a plausible inference that its mark is extremely strong. That is a critical failure, because New York's anti-dilution statute only protects "extremely strong" marks, *i.e.*, marks that are well-recognized by the general public.

Given these facial deficiencies, AlphaSense moves the Court for an order dismissing Plaintiff's claims for unfair competition under New York common law and dilution under New York General Business Law § 360-*l*. Because Plaintiff had an opportunity to cure these deficiencies in its FAC and failed to do so, these claims should be dismissed with prejudice.

[2] Plaintiff styles its Third Claim for Relief as "Trademark Infringement and Unfair Competition Under New York Common Law." AlphaSense seeks dismissal of this claim to the extent it asserts unfair competition under New York common law, but does not seek to dismiss the portion of Plaintiff's claim that asserts trademark infringement under New York common law at this time.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The facts alleged, if true, must give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff may make allegations "upon information and belief," where "the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). However, statements made "upon information and belief" will not suffice to state a claim for relief unless they have some factual support rendering them plausible. *Salu v. Miranda*, 830 Fed. App'x 341, 345 (2d Cir. 2020). Likewise, Courts do not credit legal conclusions couched as factual allegations. *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

## ARGUMENT

### 1. The FAC Fails to State a Claim for Unfair Competition Under New York Common Law Because There Are No Plausible Allegations That AlphaSense Acted in "Bad Faith."

To state a claim for unfair competition under New York common law, a plaintiff must plausibly allege that the defendant acted in bad faith. *See, e.g.*, *Pulse Creations, Inc. v. Vesture Grp.*, 154 F. Supp. 3d 48, 57 (S.D.N.Y. 2015) ("a party asserting a claim for unfair competition

under New York law must also allege bad faith on the part of the defendant.") (quoting *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005)).

In trademark infringement cases, the question with respect to bad faith is "whether the defendant attempted to exploit the good will and reputation of a senior user *by adopting the mark* with the intent to sow confusion between the two companies' products." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 88 (2d Cir. 2020) (internal quotation omitted) (emphasis added); *Pulse Creations, Inc. v. Vesture Grp.*, 154 F. Supp. 3d at 57 (bad faith could be inferred from defendant's adoption of PINKY LOS ANGELES in 2010, where plaintiff had used PINKY mark since 1981). The FAC fails to allege plausibly that AlphaSense adopted its ALPHASENSE Mark with a bad faith intent to trade upon Plaintiff's goodwill. Nor could it do so, since, by Plaintiff's own admission, AlphaSense began to use the ALPHASENSE Mark long before the events giving rise to this lawsuit allegedly occurred. FAC ¶ 19.

Plaintiff nonetheless alleges "upon information and belief" that AlphaSense had "an intent to trade on Plaintiff's goodwill and reputation and/or [acted] with a reckless disregard for the likelihood of confusion." FAC ¶ 61; *see also* FAC ¶ 33-34. But this statement fails to state a claim. "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d at 384; *see also SEC v. Thompson*, 238 F. Supp. 3d 575, 588 (S.D.N.Y. 2017); *My Mavens, LLC v. Grubhub, Inc.*, 20 Civ. 4657, 2023 WL 5237519, at *26 (S.D.N.Y. Aug. 14, 2023) (dismissing New York common law unfair competition claim where plaintiff relied primarily upon allegations of bad faith made "upon information and belief"). Here, none of the factual allegations in the FAC render Plaintiff's allegation that AlphaSense intended to trade on Plaintiff's goodwill nonconclusory, for three reasons. *See My Mavens, LLC*, 2023 WL 5237519, at *22 (assessing

plausibility of claims made "upon information and belief" by comparing them to facts "not alleged on information and belief.").

*First*, while Plaintiff alleges that AlphaSense continued to use its ALPHASENSE Mark in connection with expert network services "despite knowing of Plaintiff's rights," this cannot possibly show AlphaSense's intent to trade on Plaintiff's goodwill. FAC ¶¶ 33, 45 & 54. Even if it were true that AlphaSense acted "despite knowing of Plaintiff's rights," mere knowledge of Plaintiff's trademark is insufficient to allege bad faith. *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.NY. 2008), *aff'd,* 329 F. App'x 333 (2d Cir. 2009) ("Even if plaintiffs had prior knowledge of Fox's trademark, that fact would not demonstrate lack of good faith without additional evidence supporting an inference of bad faith."). Indeed, even the continued use of a mark after receiving a cease-and-desist letter is not bad faith. *See id.* ("'failure to completely abandon use after receiving a cease-and-desist letter is insufficient,' standing alone, 'to support an allegation of bad faith[.]'").

*Second*, Plaintiff alleges that AlphaSense knew that consumers "were confused about the source" of its services and nevertheless continued to use its ALPHASENSE Mark. FAC ¶¶ 35, 36, 45, 54 & 61. But this cannot possibly make AlphaSense's alleged intent to trade on Plaintiff's goodwill any more plausible. Any such instances of confusion arose, according to Plaintiff, only after AlphaSense acquired Stream in 2021 and allegedly "entered the Expert Network Services market for the first time." FAC ¶¶ 20-29. Even according to Plaintiff, that is long after AlphaSense adopted its ALPHASENSE Mark. FAC ¶ 19 (alleging that AlphaSense began to use ALPHASENSE in commerce in 2011). Logically, evidence of confusion in the 2020s cannot possibly bear upon AlphaSense's intentions when it adopted its mark years prior.

*Third*, Plaintiff alleges that AlphaSense could have used the TEGUS trademark instead of ALPHASENSE, but chose not to do so. FAC ¶¶ 34, 36. If the mere possibility of an alternative brand name sufficed to allege bad faith, however, bad faith would be present in every trademark dispute. It is *always* the case that a brand owner could have, at some prior point, chosen a different brand. Moreover, this allegation presents an incomplete picture of AlphaSense's marketing. In addition to the ALPHASENSE "Expert Insights" offering mentioned in the FAC (¶ 31), AlphaSense also continues to operate the www.tegus.com website, where it offers services under the name TEGUS BY ALPHASENSE, with "TEGUS" depicted larger than "BY ALPHASENSE":

**tegus**
**by AlphaSense**

The fact that AlphaSense continues to make prominent use of the TEGUS mark is also inconsistent with Plaintiff's claim that AlphaSense has a bad faith desire to trade on Plaintiff's goodwill.[3]

In short, this is not a case about bad faith. Instead, according to the FAC, the parties each spent more than a decade using their respective marks without issue. This dispute arises because, according to the FAC, AlphaSense expanded its use of ALPHASENSE in 2021 in a manner that Plaintiff believes is infringing. That is simply inconsistent with any claim that AlphaSense adopted its ALPHASENSE mark with the intent of trading on Plaintiff's goodwill. Therefore, Plaintiff's claim for unfair competition under New York common law must be dismissed.

[3] Kientzle Decl. ¶ 3, Ex. B (Tegus by AlphaSense, www.tegus.com (last visited March 24, 2025)). The Court may take judicial notice of "information contained on websites where the authenticity of the site has not been questioned." *PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215, 2018 WL 4759737, at *4 (S.D.N.Y. Sept. 30, 2018) (internal quotation omitted).

**2. Plaintiff's Claim for Trademark Dilution Under New York General Business Law § 360-*l* Fails as a Matter of Law Because Plaintiff's Mark Is Not Extremely Strong.**

Plaintiff's claim for dilution under New York General Business Law § 360-*l* also must be dismissed because the FAC fails to allege plausibly that the New York anti-dilution statute applies to the ALPHASIGHTS mark. New York's anti-dilution law "only protects 'extremely strong marks.'" *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 367 (S.D.N.Y. 2003); *see also Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir. 1983) (predecessor to N.Y. General Business Law § 360-*l* "protects only extremely strong marks"[4]); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992) (same); *Yemeni-Am. Ass'n, Corp. v. Alsaede*, 81 Misc. 3d 1235(A), 202 N.Y.S.3d 921 (N.Y. Sup. Ct. 2024) (N.Y. General Business Law § 360-*l* protects "*extremely strong marks*") (emphasis original) (internal citation and quotation marks omitted).

To determine whether a mark is "extremely strong," courts look to the same factors that are examined when assessing the strength of a mark for a trademark infringement claim. *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 496 (S.D.N.Y. 2004) (citing *Mead Data Cent., Inc.*, 875 F.2d at 1030). For trademark infringement purposes, a mark may be "conceptually strong" because it is inherently distinctive, and/or "commercially strong," because it is distinctive in the marketplace. *See, e.g.*, *Woodstock Ventures LC v. Woodstock Roots, LLC*, 387 F. Supp. 3d

[4] Like N.Y. General Business Law § 360-*l*, the prior New York anti-dilution statute protected against "dilution of the distinctive quality of a mark." *See Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1027 (2d Cir. 1989) (quoting text of N.Y. General Business Law § 368-d). Numerous courts applying N.Y. General Business Law § 360-*l* rely upon decisions interpreting the prior version of the anti-dilution statute. *See, e.g.*, *Sly Magazine, LLC v. Weider Publications L.L.C.*, 529 F. Supp. 2d 425, 443-44 (S.D.N.Y. 2007) *aff'd* 346 F. App'x 721 (2d Cir. 2009).

306, 315 (S.D.N.Y. 2019). Here, the FAC fails to provide any non-conclusory allegations concerning the conceptual or commercial strength of ALPHASIGHTS in the United States.

Instead, with respect to conceptual strength, the FAC merely alleges that ALPHASIGHTS is "a fabricated term that was coined by Plaintiff solely to identify its business and the source of its services and therefore is a fanciful mark, the strongest type of mark." FAC ¶ 65. This is a legal conclusion couched as a factual claim and should be disregarded. *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d at 121. And in any event, Plaintiff's subjective understanding of the meaning of its trademark is irrelevant. Consumers will understand that the ALPHASIGHTS mark describes the "purpose or utility" of Plaintiff's services, and is therefore a conceptually weak descriptive mark. *Bristol-Myers Squibb Co.*, 973 F.2d at 1040-41; *see also Brooklyn Brewery Corp. v. Brooklyn Brew Shop*, 17 F.4th 129, 146 (Fed. Cir. 2021) ("the question for whether a mark is descriptive is whether *a consumer* who knows what the goods and services are will understand the mark to convey information about them.") (internal quotation omitted) (emphasis added). In finance, "alpha" refers to "an investment strategy's ability to beat the market."[5] Therefore, when combined with the term "sights," ALPHASIGHTS describes the "purpose or utility" of Plaintiff's services—namely, to provide insights that help clients perceive market-beating investment strategies—rendering it a conceptually weak mark.[6]

---

[5] *See* Kientzle Decl. ¶ 4, Ex. C (James Chen, *Alpha: Its Meaning in Investing, With Examples*, Investopedia (Feb. 23, 2024), www.investopedia.com/terms/a/alpha.asp); *see also Lopez v. Nike, Inc.*, No. 20-CV-905, 2021 WL 128574, at *6 (S.D.N.Y. Jan. 14, 2021) (courts may take judicial notice of dictionary and encyclopedia entries).

[6] Plaintiff's own description of its services confirms this understanding. On its website, Plaintiff explains that its services help clients to "[a]chieve alpha" and "[a]mplify your investment returns using our primary research platform." Kientzle Decl. ¶ 5, Ex. D (AlphaSights, www.alphasights.com/hedge-funds/ (last visited March 24, 2025)). Prominent financial institutions such as M&T Bank use "alpha" in a similar fashion. *Id.* ¶ 6, Ex. E (M&T Bank, www.mtb.com/

Many other financial service providers have also registered ALPHA-formative marks for use in connection with providing investment advice and/or investment software. These third-party registrations[7] for similar marks in connection with similar services further demonstrate that ALPHASIGHTS is not "extremely strong," as required to state a claim for dilution under New York law, but is instead "relatively weak and entitled only to a narrow scope of protection." *Jack Wolfskin Ausrustung fur Draussen GmbH & Co. KGAA v. New Millenium Sports, S.L.U.*, 797 F.3d 1363, 1373-74 (Fed. Cir. 2015) (internal quotation omitted). For example:

- **ADVISOR'S ALPHA**, U.S. Reg. No. 6,080,178 for "Providing online, non-downloadable computer software for use in providing business and financial analysis in the fields of investing, investment management, finance, financial planning, retirement planning, risk management, and financial portfolio management."

- **ALPHACALC**, U.S. Reg. No. 6,140,351 for "Software as a service (SAAS) services featuring software for performing financial and human capital calculations, modeling business performance across key financial and human capital (people) metrics, and comparing user-entered data to industry benchmarks."

- **ALPHACLONE**, U.S. Reg. No. 6,090,900 for "Investment advisory services; Capital investment services."

- **ALPHACORE**, U.S. Reg. No. 4,831,383 for "Financial advice; Financial advice and consultancy services; Financial advisory and consultancy services; Financial analyses; Financial analysis and consultation; Financial analysis and research services; Financial and investment services, namely, asset and investment acquisition, consultation, advisory and development; Financial asset management; Financial consultancy; Financial consultation; Financial consulting; Financial investment analysis and stock research; Financial management; Financial planning; Financial planning and investment advisory services; Financial planning consultation; Financial portfolio analysis services; Financial portfolio management."

---

wilmington-advisors/products-and-services/what-is-alpha-in-investing (last visited March 24, 2025)).

[7] The Court may take judicial notice of trademark registrations and their content. *Lopez*, 2021 WL 128574, at *6.

- **ALPHAFRONTIER**, U.S. Reg. No. 3,784,837 for "Application service provider (ASP) featuring software in the field of hedge fund investing."
- **ALPHAFUSE**, U.S. Reg. No. 6,048,164 for "Software as a service (SAAS) services featuring software for data management for use by financial services companies."
- **ALPHALYNX,** U.S. Reg. No. 6,474,214 for "Providing financial information via a website for use in evaluating, analyzing and developing strategies for investment portfolios, assets and securities."
- **ALPHALYTICS**, U.S. Reg. No. 6,471,532 for "Rendering advice to financial institutions, namely, providing rankings of financial asset managers and analyzing those rankings."
- **ALPHASCOPE**, U.S. Reg. No. 4,436,499 for "Financial information provided by electroinic [*sic*] means."
- **ALPHA THEORY**, U.S. Reg. No. 5,112,316 for "Software as a service (SAAS) featuring software for determining asset allocation, risk management and the analysis and optimization of financial portfolios."
- **FP ALPHA,** U.S. Reg. No. 6,170,079 for "Providing on-line non-downloadable software for providing an analysis and proposed recommendation in the fields of tax, estate, insurance, benefits, lending, banking, retirement planning, finance, identity security, and customer profiling using artificial intelligence methods, natural language processing, natural language understanding, dialog systems, or predictive assistance technologies."
- **OPTION ALPHA**, U.S. Reg. No. 7,297,203 for "Software as a service (SAAS) featuring software for providing an algorithmic trading platform, and that functions as automated investment management software, and enables users to participate in a quantitative trading community."

Kientzle Decl. ¶ 7, Ex. F.

Moreover, even if Plaintiff's bare allegation that its mark is "fanciful" were adequately pled—which it is not—it does not follow that the mark is "extremely strong" for purposes of New York's anti-dilution law. Under the trademark law, the fact that a mark is considered "fanciful" merely means it is "inherently distinctive." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). That is not the same as "extremely strong." *Sly Magazine, LLC*, 529 F. Supp. 2d at

443-44 ("Although plaintiff['s] mark is inherently distinctive, as explained earlier, it is nonetheless a weak mark and does not merit protection under § 360-[*l*].").[8]

Likewise, the FAC's conclusory allegations that the ALPHASIGHTS mark "has become well-known to the public as identifying and distinguishing the source of Plaintiff's Expert Network Services exclusively and uniquely" and is "widely known by the consuming public" fail to allege plausibly that ALPHASIGHTS is commercially strong, or strong at all in the U.S. or New York. *See* FAC ¶¶ 15, 66. The FAC does not contain any allegations regarding the proportion of U.S. or New York consumers that recognize its mark, or otherwise provide factual support for Plaintiff's claim that its mark is "well-known to the public."

Indeed, it is telling that the FAC could not muster more support for the alleged commercial strength of the ALPHASIGHTS trademark. Like the initial Complaint, in trying to allege commercial strength, the FAC relies almost exclusively upon global revenue figures and foreign accolades, such as its recognition as one of "Europe's Long-Term Growth Champions" in *The Financial Times*. FAC ¶¶ 13-14. Such allegations of sales or public recognition *outside the United States* are legally and factually irrelevant to consumer perception of ALPHASIGHTS in the United States. *See Mead Data Cent., Inc.*, 875 F.2d at 1030 (explaining that "the fact that a mark has selling power in a limited geographical or commercial area" does not mean that it is strong among the general public"); *see also In re Bayer Aktiengesellschaft*, 488 F.3d 960, 969 (Fed. Cir. 2007) ("Evidence of registration in other countries is not legally or factually relevant to potential consumer perception of Bayer's analgesic goods in the United States.").

---

[8] Nor does the ownership of federal trademark registrations alone suffice to state a claim for dilution under New York law. *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease and Related Disorders Assoc.*, No. 10 Civ. 3314, 2018 WL 2084168, at *7-*8 (S.D.N.Y. May 1, 2018) (dismissing New York state dilution claim notwithstanding plaintiff's ownership of federal trademark registrations).

The FAC gives these allegations a vague domestic gloss, but still fails to include any specific allegations regarding consumer recognition of its trademark in the United States or New York. With respect to sales, Plaintiff merely adds the vague allegation that a "significant portion" of its global revenues were "invoiced to Clients based in the United States." FAC ¶ 13. What counts as a "significant portion" is left up to the reader. In any event, even " a high volume of sales" would not be sufficient to state a claim for dilution. *SMJ Grp., Inc. v. 417 Lafayette Restaurant LLC*, No. 06 Civ. 1774, 2006 WL 2516519, at *4 (S.D.N.Y. Aug. 30, 2006). Likewise, with respect to business accolades, Plaintiff adds one reference to a 2024 Forbes survey in which it received a "5-star rating," but here, too, the connection to the United States is tenuous—all Plaintiff alleges is that unspecified portion of the survey's respondents were based in the United States. *Id.* ¶ 14.

Judges in the Southern District of New York have dismissed New York anti-dilution claims where the plaintiffs failed to provide non-conclusory allegations of strength. For example, in *SMJ Grp., Inc. v. 417 Lafayette Restaurant LLC*, the Court dismissed plaintiff's New York state dilution claim notwithstanding the plaintiffs' allegations that their marks were "widely recognized by customers as being associated with the high quality dining experience offered by plaintiffs" and that they had "become uniquely associated with" the plaintiffs' restaurants. 2006 WL 2516519, at *4 (internal quotation marks omitted). The Court explained that "Plaintiffs' allegation that the marks are recognized by *customers* of the restaurant does not establish the requisite level of fame or distinctiveness." *Id.*

Similarly, the Court in *Chavez v. British Broad. Corp.* dismissed the plaintiff's New York state dilution claim where the plaintiff had merely provided conclusory allegations that, "because of his long, continuous and exclusive use of the mark . . . the mark [has] gained wide public

acceptance and association with [the] plaintiff." No. 17cv9572, 2019 WL 2250446, at *6 (S.D.N.Y. May 23, 2019) (internal quotation marks omitted). Indeed, the Court dismissed this claim notwithstanding the fact that the plaintiff was representing himself *pro se*, and therefore it had accorded his complaint "special solicitude . . . by construing [his] pleadings liberally to raise the strongest arguments they suggest." *Id.* at *2 (internal citation and quotation marks omitted).

Therefore, because the Plaintiff has failed to plausibly allege that its ALPHASIGHTS mark is "extremely strong," the Court must dismiss Plaintiff's claim for dilution under New York law.

## CONCLUSION

As set forth above, Plaintiff's claim for unfair competition under New York common law should be dismissed with prejudice because Plaintiff fails to allege plausibly that AlphaSense acted in bad faith, and Plaintiff's claim for trademark dilution under New York General Business Law § 360-*l* should be dismissed with prejudice because Plaintiff fails to allege plausibly that its mark is extremely strong.

Respectfully submitted,

By: /s/ Dori Ann Hanswirth
Dori Ann Hanswirth
Theresa M. House
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
Tel.: (212) 836-8000
Dori.Hanswirth@arnoldporter.com
Theresa.House@arnoldporter.com

Michael Kientzle
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 942-5000

*Attorneys for AlphaSense, Inc.*