James D. Weinberger (*jweinberger@fzlz.com*)
Laura Popp-Rosenberg (*lpopp-rosenberg@fzlz.com*)
Courtney B. Shier (cshier@fzlz.com) (*admitted pro hac vice*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, New York 10036
Phone: (212) 813-5900

*Attorneys for Plaintiff AlphaSights Ltd*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALPHASIGHTS LTD,<br><br>                       Plaintiff,<br>    v.<br><br>ALPHASENSE, INC.,<br><br>                    Defendant. | Case No. 1:25-cv-00479-LLS<br><br><br>**PLAINTIFF ALPHASIGHTS LTD'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I.    PRELIMINARY STATEMENT ................................................................................1

II.    STATEMENT OF FACTS ........................................................................................2

     A.    AlphaSights' Business and its ALPHASIGHTS Mark................................2

     B.    Defendant and the Confusion Caused by its Entry into the Expert Network
        Services Market Under the ALPHASENSE Mark ..................................4

     C.    This Dispute ................................................................................................7

III.    ARGUMENT .............................................................................................................8

     A.    Defendant bears a heavy burden on its motion to dismiss.........................8

     B.    The FAC contains sufficient factual allegations to state a claim for unfair
        competition under state law .........................................................................9

     C.    The FAC contains sufficient factual allegations to state a claim for dilution under
        state law ...................................................................................................14

          1.    The FAC sufficiently and plausibly alleges that the ALPHASIGHTS Mark
             is conceptually strong ................................................................15

          2.    The FAC sufficiently and plausibly alleges that the ALPHASIGHTS Mark
             is commercially strong ...............................................................19

     D.    In the Alternative, AlphaSights Requests Leave to Amend .................................22

IV.    CONCLUSION.........................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976) ..............................15

*AEP Energy Services Gas Holding Co.* v. *Bank of America, N.A.*,
626 F.3d 699 (2d Cir. 2010)...................................................................................................22

*Alzheimer's Disease & Related Disorders Association, Inc. v. Alzheimer's
Foundation of America, Inc.*, 307 F. Supp. 3d 260 (S.D.N.Y. 2018) ....................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................8, 9, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................8, 9

*BigStar Entertainment, Inc. v. Next Big Star, Inc.*,
105 F. Supp. 2d 185 (S.D.N.Y. 2000)....................................................................................16

*Block v. First Blood Associates*, 988 F.2d 344 (2d Cir. 1993) ......................................................22

*Blockchange Ventures I GP, LLC v. Blockchange, Inc.*,
21-CV-0891 (PAE), 2021 WL 4340648 (S.D.N.Y. Sept. 22, 2021) ......................................12

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
973 F.2d 1033 (2d Cir. 1992)................................................................................................15

*C & L International Trading Inc. v. American Tibetan Health Institute, Inc.*,
13-CV-2638 (LLS), 13-CV-2763 (LLS), 2013 WL 6086907 (S.D.N.Y. Nov. 19, 2013).......10

*Chavez v. British Broadcasting Corp.*,
17-CV-9572 (JGK), 2019 WL 2250446 (S.D.N.Y. May 23, 2019) ........................................21

*CJ Products LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) ....................11

*De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*,
04-CV-4099 (DLC), 2005 WL 1164073 (S.D.N.Y. May 18, 2005)........................................21

*Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416 (S.D.N.Y. 2008) .............................................10

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010)............................................. *passim*

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*,
12-CV-5105 (NRB), 2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014)......................................10

*ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219 (S.D.N.Y. 2008) ...................................14, 21

*Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*,
104 F. Supp. 3d 371 (S.D.N.Y. 2015)....................................................................................12

*George Nelson Foundation v. Modernica, Inc.*, 12 F. Supp. 3d 635 (S.D.N.Y. 2014) ................10

*Hearts on Fire Co. v. L C International Corp.*,
04-CV-2536 (LTS)(MHD), 2004 WL 1724932 (S.D.N.Y. July 30, 2004) .............................11

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995) ...........................13

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) .............................................8

*Kraft General Foods, Inc. v. Allied Old English, Inc.*,
    831 F. Supp. 123 (S.D.N.Y. 1993) ..................................................................................15, 19

*Lane Capital Management, Inc. v. Lane Capital Management, Inc.*,
    192 F.3d 337 (2d Cir. 1999)....................................................................................................15

*Litwin v. Blackstone Group, L.P.*, 634 F.3d 706 (2d Cir. 2011)..................................................2, 9

*Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*,
    797 F.3d 160 (2d Cir. 2015)....................................................................................................22

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir. 1987)................................13

*Northern Food I/E, Inc. v. Apollo Food International Inc.*,
    19-CV-0574 (MKB), 2020 WL 9607108 (E.D.N.Y. Aug. 14, 2020).....................................12

*Peek & Cloppenburg KG v. Revue, LLC*,
    11-CV-5967 (DAB), 2012 WL 4470556 (S.D.N.Y. Sept. 19, 2012) .....................................10

*Pulse Creations, Inc. v. Vesture Group, Inc.*, 154 F. Supp. 3d 48 (S.D.N.Y. 2015) ....................10

*Sly Magazine, LLC v. Weider Publications LLC*, 529 F. Supp. 2d 425 (S.D.N.Y. 2007) ............19

*SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*,
    06-CV-1774 (GEL), 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) .....................................21

*Sola Franchise Corp. v. Solo Salon Studios Inc.*,
    14-CV-0946 (JS)(AKT), 2015 WL 1299259 (E.D.N.Y. Mar. 23, 2015) ....................... 12-13

*Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339 (S.D.N.Y. 1998) ........................................12

*Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011)..............................................................22

*Zip International Group LLC v. Zenith Foods LLC*,
    20-CV-3356 (ARR)(PK), 2021 WL 5399452 (E.D.N.Y. Nov. 18, 2021)..............................12

## STATUTES

15 U.S.C. § 1065.............................................................................................................................4

15 U.S.C. § 1114.............................................................................................................................7

15 U.S.C. § 1115.............................................................................................................................4

15 U.S.C. § 1125.............................................................................................................................7

New York General Business Law § 360-*l* ................................................................................7, 14

**RULES**

Fed. R. Civ. P. 12 .................................................................................................1

Fed. R. Civ. P. 15 ...............................................................................................22

Fed. R. Evid. 201 ...............................................................................................17

**TREATISE**

J. Thomas McCarthy,
    McCarthy on Trademarks & Unfair Competition (5th ed. 2025) ...........................17, 18

Plaintiff AlphaSights Ltd ("AlphaSights" or "Plaintiff") respectfully submits this memorandum of law in opposition to the Motion to Dismiss the Third and Fourth Claims for Relief of Plaintiff's First Amended Complaint for Failure to State a Claim ("Motion" or "Mot.") filed by Defendant AlphaSense, Inc. ("AlphaSense" or "Defendant").

I.      **PRELIMINARY STATEMENT**

AlphaSights has been a leader in the Expert Network Services market (defined below) for more than a decade, and during that time its ALPHASIGHTS trademark (the "ALPHASIGHTS Mark") has become well-known and established extensive goodwill. Recently, Defendant also entered the Expert Network Services market, providing the same type of services to the same type of consumers (namely industry experts and business representatives) under the trademark ALPHASENSE (the "ALPHASENSE Mark"). Not surprisingly, Defendant's entry into AlphaSights' market with the confusingly similar ALPHASENSE Mark has left a long trail of confusion, with *hundreds* of instances where industry experts and business representatives have confused the two companies. Despite knowing that its use of the ALPHASENSE Mark was causing confusion and hoping to benefit from the goodwill of the ALPHASIGHTS Mark, Defendant persisted in its infringement and did not even acknowledge a cease-and-desist letter sent by AlphaSights until after this lawsuit was filed.

Defendant now apparently hopes to delay the eventual reckoning for its unlawful actions through questionable motion practice. While acknowledging that the First Amended Complaint adequately makes out claims for trademark infringement and unfair competition under federal law as well as trademark infringement under New York state law, Defendant seeks to dismiss the claims for unfair competition and dilution under state law under Federal Rule of Procedure 12(b)(6) for an alleged failure to state those claims. However, as discussed herein, Defendant's

1

Motion fails. As further explained below, AlphaSights' First Amended Complaint adequately alleges the bad faith element of a New York unfair competition claim, and adequately alleges that the ALPHASIGHTS Mark is strong enough for protection under New York's anti-dilution law. Defendant's arguments to the contrary are unavailing, and its attempts to litigate the merits at this stage of the proceeding – even if Defendant's merits arguments were compelling, which they are not – is improper and prejudicial to the fair and efficient resolution of this matter. AlphaSights therefore respectfully requests that Defendant's Motion be denied so that this case can go forward without further undue delay and Defendant's unlawful actions, which are causing ongoing confusion and harming both AlphaSights and consumers, can be stopped.

## II.    STATEMENT OF FACTS[1]

### A.    AlphaSights' Business and its ALPHASIGHTS Mark

AlphaSights is a leading business research and information service provider specializing in providing both direct access to industry experts (including through one-to-one industry expert consultations) and access to expert knowledge derived from industry experts (collectively, "Expert Network Services"). (FAC ¶ 9.) AlphaSights offers its Expert Network Services under the ALPHASIGHTS Mark. (*Id.*)

AlphaSights' consumers come from both sides of the Expert Network Services market: (i) businesses who contract, or might contract, for access to expert knowledge ("Clients"), and (ii) the industry experts that share, or may share, expert knowledge with Clients ("Experts"). (*Id.* ¶ 10.) AlphaSights' Clients and Experts hail from a myriad of industries, including healthcare,

---

[1] These facts are based on the allegations set forth in AlphaSights' First Amended Complaint ("FAC"), which must be taken as true on a motion to dismiss for failure to state a claim. *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).

energy, professional services, financial services, logistics, and telecommunications, to name a few. (*Id.* ¶ 11.)

AlphaSights has invested a significant amount of time, effort, and money in developing and marketing its Expert Network Services under the ALPHASIGHTS Mark (*Id.* ¶ 15) – and those efforts have paid off. AlphaSights' business has grown tremendously since its launch in 2008, and today AlphaSights is a highly successful global business with offices across three continents, including two in the United States (New York and San Francisco). (*Id.* ¶ 12.) AlphaSights has engaged millions of Experts and has facilitated and organized more than two million consultations between Clients and Experts. (*Id.* ¶ 13.) AlphaSights' revenues, including those generated from Clients in the United States, are substantial. In 2024 alone, AlphaSights had global revenues in excess of $500 million, a significant portion of which was invoiced to Clients based in the United States. (*Id.*)

AlphaSights has been recognized by third parties for its industry-leading Client service and Expert relationships. (*Id.* ¶ 14.) For example, AlphaSights was recently recognized by The Financial Times and Statista as one of Europe's Long-Term Growth Champions (2024); won "Best Research Provider" in Hedgeweek and Private Equity Wire's European Credit Awards (2023); and has consistently achieved annual "Great Place To Work Certification[s]" in the United States and Europe. (*Id.*) Additionally, in 2024, Forbes conducted a survey of consulting firms and consulting networks (i.e., providers of Expert Network Services, such as AlphaSights), including with respondents in the United States, and AlphaSights was the only company given a 5-star rating by Forbes in the "Consulting Networks" category. (*Id.*)

In addition to AlphaSights' common law rights in the ALPHASIGHTS Mark acquired through many years of successful use and marketing, AlphaSights owns numerous federal

registrations for the ALPHASIGHTS Mark covering Expert Network Services, including

Registration No. 3991714, registered in 2011; Registration No. 7244871, registered in 2023; and

Registration No. 7490472, registered in 2024. (*Id.* ¶ 16.) All of these registrations are valid,

subsisting, and in full force and effect. Therefore, pursuant to Section 33(a) of the Lanham Act,

15 U.S.C. § 1115(a), the registrations serve as prima facie evidence of the validity of the

ALPHASIGHTS Mark and of AlphaSights' exclusive right to use the mark in connection with

registered services. (*Id.*) Additionally, U.S. Registration No. 3991714 has become incontestable

under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus serves as *conclusive* evidence

of the validity of the registered mark and of AlphaSights' exclusive right to use the mark in

connection with the services listed therein, as provided by Section 33(b) of the Lanham Act, 15

U.S.C. § 1115(b). (*Id.*)

### B. Defendant and the Confusion Caused by its Entry into the Expert Network Services Market Under the ALPHASENSE Mark

Defendant also operates in the business research and information market. (FAC ¶ 18.)

When Defendant began offering services under the ALPHASENSE Mark in 2011, its business

focused on providing its customers with a database of public documents, such as publicly filed

financial forms and news and trade journals. (*Id.* ¶ 19.) Defendant's business remained largely

unchanged for a decade until late 2021 when it acquired Stream, a small company offering

limited access to some of the same type of Expert Network Services as AlphaSights. (*Id.* ¶ 20.)

Specifically, Stream offered a small library of transcripts of interviews between Experts and

investment analysts – approximately 8,500 transcripts at the time of the acquisition. (*Id.*) With

the purchase of Stream, Defendant entered the Expert Network Services market (albeit in a very

modest way) for the first time – Defendant at the time called it "brand-new territory" for the

company. (*Id.*)

Defendant's Expert Network Services business did not grow much for two years. At the end of 2023, it began a very limited offering of one-to-one Expert consultations for the first time. (*Id.* ¶ 21.) Then, a few months later, Defendant embarked upon a significant expansion of its Expert Network Services when it acquired the company Tegus in July 2024. (*Id.* ¶ 22.) Tegus, a direct competitor of AlphaSights, had a significant business offering both on-demand one-to-one Expert consultations (30,000 per year) and a large transcript library of expert consultations (more than 100,000 transcripts). (*Id.*)

The acquisition of Tegus enabled Defendant to compete in the Expert Network Services market on a completely different footing and scale than following the Stream acquisition, and Defendant now provides services in the Expert Network Services market using the ALPHASENSE Mark in direct competition to the services that AlphaSights has long offered under the ALPHASIGHTS Mark. (*Id.* ¶ 24.)

Extensive confusion has followed Defendant's move into AlphaSights' industry. Clients and Experts have repeatedly confused AlphaSights and AlphaSense, particularly following Defendant's acquisition of Tegus and its large-scale expansion into the Expert Network Services industry. (*Id.* ¶ 25.) Instances of actual confusion number in the *hundreds*. (*Id.* ¶ 26.) Many of the confused Experts write to AlphaSights complaining about something Defendant has done. (*Id.* ¶¶ 26, 28.) Others refuse to do business with AlphaSights because of their view of Defendant. (*Id.* ¶¶ 26, 28.) In at least one instance, a Client paid tens of thousands of dollars to Defendant on an invoice issued by AlphaSights. The confusion Defendant is creating is harming AlphaSights' reputation and the goodwill of its brand. (*Id.* ¶ 27.) Defendant knew that its use of ALPHASENSE was causing actual confusion for months before the Complaint was filed and yet persisted in that use. (*Id.* ¶¶ 35-36.) Given this, there would have been no reason for Defendant

to continue using the ALPHASENSE Mark and continue causing confusion unless it hoped to profit from, or actually was profiting from, the confusion.

The confusion between AlphaSights and AlphaSense experienced by Clients and Experts is the direct result of the close similarity of the parties' names and marks – ALPHASIGHTS and ALPHASENSE – and Defendant's entry into the same Expert Network Services market in which AlphaSights has long operated and is well known. (*Id.* ¶ 29.) The ALPHASENSE Mark is highly similar to the ALPHASIGHTS Mark and is being used for the identical Expert Network Services first offered by AlphaSights. (*Id.* ¶ 30.) Both marks start with ALPHA and add to it a dictionary term that begins with the letter S and ends in an "s" sound. (*Id.*) Further, SIGHTS and SENSE are related in that "sight" is one of the five basic human "senses." (*Id.*) Thus, the marks share visual, aural, and connotative similarities. (*Id.*) Further, the marks are presented similarly in the marketplace. (*Id.*) Both companies capitalize the A and S of their respective mark (AlphaSights and AlphaSense), and both companies employ a similar black, sans serif font in the logo format of their respective marks. (*Id.*)

Defendant is aggravating the confusing similarity of the ALPHASIGHTS and ALPHASENSE names and marks by using the term "insights" in connection with its Expert Network Services offering. (*Id.* ¶ 31.) For example, Defendant calls part of its Expert Network Services "AlphaSense Expert Insights" and in shorthand as "AS Expert Insights," thus associating the SIGHTS portion of AlphaSights' mark with Defendant's competing business. (*Id.*) In fact, one confused Expert, while complaining about not having been paid (by Defendant) for a consultation, provided AlphaSights a copy of a calendar invite sent from "AlphaSense Insights Interview" with the calendar event titled, "AS Expert Insights." (*Id.*)

6

Before Defendant began offering Expert Network Services under its ALPHASENSE Mark, it was well aware that AlphaSights had long offered Expert Network Services under its ALPHASIGHTS Mark. (*Id.* ¶ 33.) Despite being aware of AlphaSights' rights, Defendant nonetheless decided to enter the Expert Network Services market using the ALPHASENSE Mark. (*Id.*) AlphaSense did this with the intent to trade on AlphaSights' goodwill and reputation and/or with a reckless disregard for the likelihood that confusion would result from such use. (*Id.*) The fact that Defendant opted to use ALPHASENSE for its new business rather than, for example, using the established brand TEGUS, demonstrates that Defendant wanted to benefit from AlphaSights' established reputation in the Expert Network Services industry. (*Id.* ¶ 34.)

## C.    This Dispute

With evidence of confusion piling up, AlphaSights decided it needed to take action to stop its business and reputation being harmed daily by Defendant's actions. Accordingly, AlphaSights sent Defendant a cease-and-desist letter in December 2024, advising that AlphaSights would file suit if Defendant did not respond to the letter by January 13, 2025. (FAC ¶ 38.) When Defendant did not respond by that deadline, AlphaSights filed its Complaint. (*Id.*)[2]

AlphaSights' Complaint alleged four related causes of action all stemming from the same set of facts concerning Defendant's actions: federal trademark infringement under 15 U.S.C. § 1114; federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a)(1)(A); state trademark infringement and unfair competition under New York common law; and state trademark dilution under New York General Business Law § 360-l. (ECF 1.) On

---

[2] Although Defendant alleges in its Motion that AlphaSights filed suit "before the parties could address the concerns raised in the letter," Mot. at 1, it cannot refute the fact that it never responded to the December 2024 cease-and-desist letter and ignored the January 13, 2025, deadline set therein, and thus made no attempt to address the concerns AlphaSights raised in its letter.

its deadline for responding to the Complaint (which had been extended with AlphaSights'

consent, ECF 15, 17), instead of answering, Defendant filed a motion to dismiss the New York

state claims for unfair competition and dilution on the basis that AlphaSights had failed to state

these claims sufficiently. (ECF 20-21.) Specifically, Defendant argued that AlphaSights had

failed to allege the bad faith required for unfair competition under New York common law, or

that the ALPHASIGHTS Mark was strong enough to qualify for anti-dilution protection on New

York statutory law. (*Id.*)

While AlphaSights did not believe that Defendant's first motion to dismiss had merit, in

an attempt to move this matter forward rather than getting mired down in pointless motion

practice, AlphaSights filed the First Amended Complaint on March 10, 2025, to further expand

upon certain of its allegations. (ECF 23.) Nonetheless, Defendant still refuses to engage on the

merits, and has now filed a second motion to dismiss on the same basis as its first motion to

dismiss, seeking to dismiss the same claims on the same basis. (ECF 24-25.)

III.    **ARGUMENT**

    **A.    Defendant bears a heavy burden on its motion to dismiss.**

Defendant has moved this court to dismiss AlphaSights' First Amended Complaint under

Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Defendants

bear a heavy burden, as Rule 12(b)(6) dismissals are generally disfavored. To succeed,

Defendant must prove that the First Amended Complaint's allegations lack "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see*

*also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (movant bears

burden). In determining whether a defendant has met its burden, the Court is required to accept

the plaintiff's factual allegations as true and draw all inferences in favor of the plaintiff. *Litwin*, 634 F.3d at 715.

A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is "not akin to a 'probability requirement.'" *Id*. Accordingly, the Court is not permitted to consider on a motion to dismiss whether a plaintiff will eventually be able to prove the facts alleged; those facts must be assumed to be true "even if doubtful in fact." *Id.* at 696 (citing *Twombly*, 550 U.S. at 555); *see DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010).

As detailed below, there is little question that AlphaSights has pled sufficient facts to state plausible claims of unfair competition and dilution under New York Law.

**B.    The FAC contains sufficient factual allegations to state a claim for unfair competition under state law.**

Defendant argues that AlphaSights' state unfair competition claim fails because AlphaSights allegedly has failed to sufficiently plead the element of bad faith. More specifically, Defendant argues that AlphaSights has done nothing more than "'plop "upon information and belief"'" in front of the conclusory statement "that AlphaSense has 'an intent to trade on Plaintiff's goodwill and reputation and/or [acted] with a reckless disregard for the likelihood of confusion.'" (Mot. at 4.) Contrary to Defendant's contention, the FAC in fact includes multiple factual allegations that support the conclusion that Defendant acted in bad faith, any one of which is sufficient to withstand Defendant's motion to dismiss.

First, the FAC alleges that Defendant commenced use of the ALPHASENSE Mark for Expert Network Services with knowledge of AlphaSights' use of the ALPHASIGHTS Mark for the same services. (FAC § 33.) Defendant's contention that "mere knowledge of Plaintiff's

9

trademark is insufficient to allege bad faith" for purposes of withstanding a motion to dismiss (Mot. at 5) is contradictory to clear jurisprudence from this Circuit.[3] *See, e.g.*, *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 58 (S.D.N.Y. 2015) ("clear assertion that [defendants] acted with knowledge of Plaintiff's rights . . . clears the threshold for surviving a motion to dismiss" on the question of bad faith); *George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 652 (S.D.N.Y. 2014) ("Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark.") (quoting *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 389 (2d Cir. 2005)); *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, 12-CV-5105 (NRB), 2014 WL 3950897, at *9 (S.D.N.Y. Aug. 13, 2014) (finding allegation that counterclaim-defendant "knowingly and intentionally infringed" "with the intent to unfairly trade on and/or misappropriate the reputation and goodwill of [the trademark owner]" is sufficient to defeat motion to dismiss); *C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*, 13-CV-2638 (LLS), 13-CV-2763 (LLS), 2013 WL 6086907, at *5 (S.D.N.Y. Nov. 19, 2013) (finding allegation of New York unfair competition sufficiently stated when plaintiff claimed that "defendants used plaintiffs' marks in a manner likely to cause confusion" and "such actions were taken in bad faith, with full knowledge of the Plaintiffs' ownership of, and/or exclusive right to use and license the Plaintiffs' Marks"); *Peek & Cloppenburg KG v. Revue, LLC*, 11-CV-5967 (DAB), 2012 WL 4470556, at *6 (S.D.N.Y. Sept. 19, 2012) (allegation "[defendant] knew of

---

[3] The only case AlphaSense cites in support of its contention is *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 333 (2d Cir. 2009), but that case is inapposite for multiple reasons. Most notably, *Dessert Beauty* concerned not a motion to dismiss but rather a motion for summary judgment – a meaningfully different procedural posture with different burdens. Further, the *Dessert Beauty* case involved a question of whether defendant used the phrase "love potion" fairly in its descriptive sense and other than as a trademark – issues decidedly not present here, and as to which a defendant's knowledge of plaintiff's rights far less relevant.

[the plaintiff's] mark and continued to infringe" sufficient to defeat motion to dismiss); *Hearts on Fire Co. v. L C Int'l Corp.*, 04-CV-2536 (LTS)(MHD), 2004 WL 1724932, at *4 (S.D.N.Y. July 30, 2004) (allegation that defendant "'willfully, intentionally, and knowingly used a designation confusingly similar' to Plaintiff's mark" sufficiently alleged bad faith, as "any determinations regarding Defendant's potential bad faith, which would involve a factual inquiry, would . . . be premature").

Thus, the allegation that Defendant had knowledge of AlphaSights' rights before entering a new business under the ALPHASENSE Mark is sufficient to withstand Defendant's motion to dismiss the New York unfair competition claim.

Second, the FAC alleges that Defendant intentionally chose to use the ALPHASENSE Mark for its new Expert Network Services business rather than continuing to use the TEGUS mark[4] specifically because Defendant wanted to trade on AlphaSights' goodwill and in reckless disregard for the likelihood of confusion. (FAC ¶¶ 33-34.) Courts have found bad faith where a defendant has jettisoned a prior used mark to use a mark similar to the plaintiff's. *Cf. Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 301 (S.D.N.Y. 2018) (distinguishing *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011), because in that case "there was clear evidence of defendants' bad faith in their decision to abandon their previously-used URL 'plusheze.com' . . ."). Thus, contrary to Defendant's assertion, the fact that the company transitioned away from TEGUS when offering

---

[4] As alleged in the FAC, AlphaSense conducts its Expert Network Services under the mark ALPHASENSE. AlphaSense tries to create a factual dispute regarding these allegations by referencing a TEGUS BY ALPHASENSE logo. (Mot. at 6.) However, the FAC alleges that Defendant markets Expert Network Services under the ALPHASENSE Mark, which must be accepted as true even if Defendant may also use the TEGUS BY ALPHASENSE logo in limited situations. Notably, Defendant does not dispute that it uses ALPHASENSE without TEGUS for its Expert Network Services.

11

Expert Network Services to instead use a mark that is confusingly similar to AlphaSights' mark clearly supports an inference of bad faith.

Third, the FAC alleges that Defendant knew that its use of the ALPHASENSE Mark for Expert Network Service was causing actual confusion in the marketplace and yet persisted in such use. (FAC ¶ 35-36.) This factual allegation also supports the conclusion that AlphaSense acted in bad faith. *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 381 (S.D.N.Y. 2015) (bad faith found where defendants continued using FLAT RATE mark even after acknowledging that it would confuse customers); *cf. Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 357 (S.D.N.Y. 1998) (knowledge that consumers "might be confused" contributed to defendant's bad faith).

Fourth, the FAC alleges that Defendant continued its infringement after receipt of a cease-and-desist letter. (FAC § 38.) Again, case law is clear that an allegation that a defendant persisted in infringing conduct after receipt of a cease-and-desist letter is sufficient to plead bad faith. *Zip Int'l Grp. LLC v. Zenith Foods LLC*,  20-CV-3356 (ARR)(PK), 2021 WL 5399452, at *6 (E.D.N.Y. Nov. 18, 2021) (allegations of previous cease-and-desist letters "suffice to demonstrate defendants' bad faith"); *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, 21-CV-0891 (PAE), 2021 WL 4340648, at *5 (S.D.N.Y. Sept. 22, 2021) ("The allegations of Defendant's knowledge of the alleged infringement and persistence thereafter in using the mark support a claim of bad faith."); *N. Food I/E, Inc. v. Apollo Food Int'l Inc.*, 19-CV-0574 (MKB), 2020 WL 9607108, at *14 (E.D.N.Y. Aug. 14, 2020) ("Plaintiff's allegations that the Moving Defendants continued to use the '320 Mark after receiving cease and desist letters from Plaintiff informing them of their infringing behavior are sufficient to plead bad faith at the motion to dismiss stage"); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, 14-CV-0946 (JS)(AKT), 2015

WL 1299259, at *11 (E.D.N.Y. Mar. 23, 2015) (finding bad faith when "[p]laintiff's representatives spoke to [d]efendant's owner twice prior to this litigation, warning him that [d]efendant was infringing on [p]laintiff's mark and suggesting that [d]efendant change the name of its salon to avoid further infringement").

In sum, as shown above, the FAC contains multiple factual allegations each of which independently supports the bad faith element of an unfair competition claim under New York state law and collectively soundly defeat Defendant's motion to dismiss on this issue. Despite acknowledging most of these allegations in its motion, Defendant nonetheless argues that the FAC fails to *plausibly* allege bad faith. Specifically, Defendant argues that the FAC cannot plausibly allege that Defendant intended to trade on AlphaSights' goodwill because "AlphaSense began using the ALPHASENSE Mark long before the events giving rise to this lawsuit allegedly occurred." Mot. at 4; *see also id.* at 5. This argument is a red herring. The relevant unfair competition standard does not reference "adoption" of a mark but rather "misappropriation" of another's rights. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995) ("The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.") (citations and internal quotation marks omitted). Thus, the fact that Defendant initially adopted its mark in 2011 for a different line of business has no bearing on its intent when it started using the ALPHASENSE Mark for a completely new business category – the Expert Network Services business – in direct competition with AlphaSights, or its intent when it decided to persist in using that mark after learning that hundreds of consumers were confused. *Cf. Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987) ("In this circuit and others, numerous decisions have

recognized that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer.") (citation omitted).

In sum, as demonstrated above, the FAC sufficiently and plausibly alleges that Defendant has acted in bad faith. Therefore, Defendant's motion to dismiss should be denied as to AlphaSights' claim for unfair competition under New York common law.

## C.    The FAC contains sufficient factual allegations to state a claim for dilution under state law.

Defendant also seeks to dismiss the FAC's Fourth Cause of Action for trademark dilution under New York General Business Law § 360-*l*, arguing that "the FAC fails to allege plausibly that the New York anti-dilution statue applies to the ALPHASIGHTS Mark." More specifically, Defendant contends that the FAC does not plausibly allege that the ALPHASIGHTS Mark is strong enough to be entitled to anti-dilution protection. However, instead of pointing to any real deficiencies in the allegations of the FAC, Defendant improperly attempts to argue the merits of the case. *DiFolco*, 622 F.3d at 113 (motion to dismiss tests adequacy of the pleadings, not adequacy of the evidence).

The relevant statute states, "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen. Bus. L. § 360-*l*. While courts have held that a plaintiff's mark must be "extremely strong" to qualify for protection under New York anti-dilution statute, "extremely strong" does not mean "famous" or "celebrated." *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 228 (S.D.N.Y. 2008). Rather, the mark can be extremely strong *either* because of its inherently distinctive qualities or due to its commercial strength.

*Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 134 (S.D.N.Y. 1993)

(citations omitted).

      Here, as explained below, the FAC contains numerous allegations pertaining both to the

inherent strength and the commercial strength of the ALPHASIGHTS Mark, all of which must

be accepted as true on this motion to dismiss. Whether the inherently and commercially strong

ALPHASIGHTS Mark is strong *enough* to meet the "extremely strong" standard for protection

under New York anti-dilution law goes to the merits of AlphaSights' claim and is not open for

debate on a motion to dismiss. *DiFolco*, 622 F.3d at 113 (motion to dismiss does not test

adequacy of the evidence).

    **1.**    **The FAC sufficiently and plausibly alleges that the ALPHASIGHTS Mark is conceptually strong.**

      With regard to inherent (or conceptual) strength, the FAC alleges that the

ALPHASIGHTS Mark is, in trademark parlance, a "fanciful mark" because it is "a fabricated

term that was coined by Plaintiff solely to identify its business and the source of its services."

(FAC ¶ 65.) The FAC further alleges that, as a fanciful mark, the ALPHASIGHTS Mark "is the

strongest type of [conceptual] mark." (*Id*.) Defendant's contention that this is "a legal conclusion

couched as a factual claim" (Mot. at 8) is incorrect. The statement that ALPHASIGHTS is a

"fabricated term . . . coined by Plaintiff" is a statement of fact and not a conclusion of law under

any interpretation. Further, the placement of a mark along the spectrum of conceptual strength –

from generic at the weakest end to fanciful and arbitrary at the strongest end, *see Abercrombie &*

*Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976) – is a question of fact; *see also*

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1039-40 (2d Cir. 1992) (the

classification of a designation on the *Abercrombie* spectrum "is a question of fact"); *Lane Cap.*

*Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).  Thus, AlphaSights has

sufficiently and plausible alleged that the ALPHASIGHTS Mark is the strongest type of mark as far as conceptual strength is concerned. *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 197-98 (S.D.N.Y. 2000) ("At the apex of the trademark hierarchy are the terms denominated arbitrary or fanciful. . . .[T]he law recognizes the more unique and inherently distinctive the mark, the stronger it is.").

While AlphaSights' allegations regarding the inherent strength of its mark must be presumed true on a motion to dismiss, Defendant nonetheless attempts to dispute the merits by arguing that "[c]onsumers will understand that the ALPHASIGHTS mark describes the 'purpose or utility' of Plaintiff's services, and is therefore a conceptually weak descriptive mark." (Mot. at 8.) But Defendant has submitted no evidence of what consumers in fact understand when they perceive the ALPHASIGHTS Mark. Rather, they have asked the Court to rely on materials outside the FAC and to deduce from those materials what consumers might believe. This is not the role of a Court on a motion to dismiss, and Defendant has not cited any case in which the Court took on that role – nor could it, since the Court on a motion to dismiss for failure to state a claim under Rule 12(b)(6) must only test the sufficiency of a complaint and not resolve factual disputes or to decide the merits of a claim. *Iqbal*, 556 U.S. at 678; *see also DiFolco*, 622 F.3d at 113 (reinstating claims that district court had improperly dismissed after "'assay[ing] the weight of the evidence' . . . and improperly cho[osing] between reasonably competing alternatives") (citation omitted).

As for the materials that Defendant submitted, they are either unreliable or are not relevant. First, the printout from the website Investopedia.com is not subject to judicial notice, because it is not in fact a dictionary or encyclopedia entry as Defendant contends. (Mot. at 8, n.5.) The Federal Rules of Evidence establish that judicial notice may be taken of "a fact that is

16

not subject to reasonable dispute because it: (1) is generally known within the trial court's

territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While judicial notice may be

taken of dictionary and encyclopedia entries under this rule, Investopedia.com is neither a

dictionary nor an encyclopedia; it is an informational website

(https://www.investopedia.com/about-us-5093223) operated by a publishing company

(https://www.dotdashmeredith.com/) – in other words, it is more like a magazine than a

dictionary or an encyclopedia.

      But even if the Court were to take judicial notice of the Investopedia article submitted by

Defendant, there is a logical disconnect between Defendant's proposed definition of "alpha" and

AlphaSights' business. First, AlphaSights is not a finance or investment company. Even if

"alpha" may have some meaning in relation to investments, that does not mean it is descriptive

of AlphaSights' Expert Network Services business. *See* J. Thomas McCarthy, 1 MCCARTHY ON

TRADEMARKS & UNFAIR COMPETITION § 11:19 (5th ed. 2025) (hereinafter "*McCarthy*") ("To be

placed in the 'descriptive' category, a designation must *directly* convey some information about

th[e] product or service. . . . If information about the product or service given by the designation

is indirect or vague, then . . . the term is . . . 'suggestive.'") (emphasis added). Second, Defendant

does not explain exactly how consumers will understand that the coined term ALPHASIGHTS

describes a business that "provide[s] insights that help clients perceive market-beating

investment strategies." (Mot. at 8.) To be clear, that is not a good description of AlphaSights'

business; rather, at the highest level, AlphaSights matches Clients across various industries, such

as healthcare, energy, professional services, financial services, logistics, and

telecommunications, with the Expert knowledge they are looking for.

In fact, even assuming that consumers would dissect the coined ALPHASIGHTS Mark into two different words – "alpha" and "sights" – they would not necessarily or even probably come to the understanding that Defendant suggests. Merriam-Webster dictionary, for example, provides the following definitions for "alpha," among others (but none that equate to the definition proposed by Defendant):

- "the 1st letter of the Greek alphabet"

- "something that is first"

- "the first version of a product (such as a computer program) that is being developed and tested"

- "a socially dominant person or animal"

*See* https://www.merriam-webster.com/dictionary/alpha. Most of these definitions revolve around concepts of primacy or dominance. Thus, if consumers are inclined to dissect the ALPHASIGHTS Mark and imbue it with a meaning based on the words "alpha" and "sights," they are more likely to conclude that the mark suggests "first sights" or "primary sights" or "dominant sights." At most, this would be suggestive of AlphaSights' business – if even that. And suggestive marks are not conceptually weak. 1 *McCarthy* § 11:4 ("A word that suggests, but does not directly describe, some aspect of the goods or services falls into the 'suggestive' category and is inherently distinctive.").

Defendant's offering of third-party trademark registrations that incorporate the word ALPHA are no more illuminating. First, just because the third-party marks incorporate the term ALPHA, that does not automatically make them "similar marks" (and in fact all of the marks referenced by Defendant differ substantially from AlphaSights' mark). More critically, the third-party registrations also do not designate "similar services" as Defendant contends as none of the third-party registrants are businesses in the Expert Network Services industry.

18

Finally, Defendant's reliance on *Sly Magazine, LLC v. Weider Publications LLC*, 529 F.

Supp. 2d 425 (S.D.N.Y. 2007), *aff'd*, 346 F. App'x 721 (2d Cir. 2009), for the proposition that

even inherently strong marks may be weak appears to be misplaced. Defendant seems to be

suggesting that case stands for the proposition that inherently distinctive marks might

nonetheless be *conceptually* weak – but that is not what *Sly Magazine* says. Rather, in that case,

the mark SLY was found to be weak because it lacked *commercial* strength. 529 F. Supp. 2d at

438, 443.

In sum, Defendant has not shown that AlphaSights' allegation that its ALPHASIGHTS

Mark falls in the category of the strongest conceptual marks is either insufficient or implausible.

Defendant's arguments that AlphaSights' Mark is conceptually weak are themselves implausible.

Moreover, any question about the strength of AlphaSights' Mark and whether it is sufficiently

"extremely strong" on a conceptual basis cannot be resolved on a motion to dismiss.

### 2.    The FAC sufficiently and plausibly alleges that the ALPHASIGHTS Mark is commercially strong.

Since the FAC plausibly alleges that ALPHASIGHTS is a conceptually strong mark, it

does not matter whether the FAC sufficiently alleges that the mark is also commercially strong,

since strength along only one of these dimensions is sufficient for New York's anti-dilution law.

*Kraft Gen. Foods*, 831 F. Supp. at 134. In any event, however, the FAC contains multiple

allegations regarding the commercial strength of the ALPHASIGHTS Mark. The FAC alleges

that the ALPHASIGHTS Mark has been in use since 2008 (FAC ¶ 12); that AlphaSights has

grown into a global business with two offices in the United States on opposite coasts (New York

and San Francisco) (*id.* at ¶¶ 12, 15); that the business has achieved considerable commercial

success (*id.* at ¶ 13); that AlphaSights "has engaged millions of Experts" (*id.*); that AlphaSights

"has facilitated and organized more than two million consultations between Clients and Experts"

(*id.*); that AlphaSights has a "consistently high growth rate" (*id.* at ¶ 15); that AlphaSights has

generated "substantial" revenue (*id.* at ¶ 13); that in 2024 alone AlphaSights' revenues exceeded

$500 million (*id.*); that a "significant portion" of AlphaSights' $500 million 2024 revenue was

invoiced to clients based in the United States (*id.*); that the "ALPHASIGHTS brand has become

well-known for its high quality Expert Network Services" (*id.* at ¶ 14); that AlphaSights is an

industry leader in Client service and Expert relationships (*id.* at ¶ 15); that AlphaSights has won

numerous awards for its business (*id.* at ¶ 14); that AlphaSights "has invested a significant

amount of time, effort, and money in developing and marketing" the ALPHASIGHTS Mark (*id.*

at ¶ 15); that the ALPHASIGHTS Mark "has become well-known to the public as identifying

and distinguishing the source of Plaintiff's Expert Network Services exclusively and uniquely

(*id.* at ¶ 15); that the ALPHASIGHTS Mark "has become well-known within Plaintiff's industry

and to Client and Experts" (*id.* at ¶¶ 42, 51); that AlphaSights has "established extensive

goodwill by reason of the high quality of services provided under or in connection with the

ALPHASIGHTS Mark" (*id.*); and that the ALPHASIGHTS Mark "immediately indicat[es] to the

public that services fearing the [mark] come from, or are sponsored or approved, by Plaintiff"

(*id*).

Faced with the weight of AlphaSights' numerous factual allegations pointing to the

commercial strength of the ALPHASIGHTS Mark, Defendant weakly attacks a few of them.

AlphaSense argues that the FAC does not sufficiently plead commercial strength because it

"does not contain any allegations regarding the proportion of U.S. or New York consumers that

recognize its mark." (Mot. at 11.) Tellingly, however, AlphaSense is not able to offer a single

decision that granted a motion to dismiss on this basis. Defendant also complains about

allegations concerning "global revenue figures and foreign accolades" as being irrelevant to the

strength of the ALPHASIGHTS Mark in the United States. (Mot. at 8.) However, contrary to Defendant's contention, a brand's "worldwide presence" can be relevant to assessing the strength of a mark even in the United States. *See ESPN*, 586 F. Supp. 2d at 229-30 (noting allegations of "worldwide presence" and sales "in many countries throughout the world" in recounting allegations sufficient to defeat a motion seeking dismissal of a New York dilution claim).

Further, neither of the cases that Defendant rely upon are apposite. In *Chavez v. British Broadcasting Corp.*, 17-CV-9572 (JGK), 2019 WL 2250446, at *7 (S.D.N.Y. May 23, 2019), the plaintiff had alleged that "because of his 'long, continuous and exclusive use of the mark . . . the mark [has] gained wide public acceptance and association with [the] plaintiff'" but "did not plead any other facts to support [the] claim." AlphaSights has pleaded many more facts here, as discussed above. In *SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*, 06-CV-1774 (GEL), 2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006), the Court commingled its analysis of the defendant's motion to dismiss the plaintiff's state law dilution claim with its analysis of the federal law dilution claim. *Id.* at *3-4. Since the two claims are subject to different standards, it is difficult to ascertain how the Court's analysis applies to a New York dilution claim standing alone, as here.

Therefore, Defendant has not shown that AlphaSights has not sufficiently and plausibly alleged that its ALPHASIGHTS Mark is commercially an extremely strong mark that is entitled to protection under New York's anti-dilution law. Because AlphaSights need only plausibly allege that its mark is conceptually or commercially strong enough for a dilution claim, and because AlphaSights has alleged both, Defendant's motion to dismiss the New York dilution claim should be dismissed. *Cf. De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 04-CV-4099 (DLC), 2005 WL 1164073, at *9 (S.D.N.Y. May 18, 2005) ("Whether the [plaintiff's] mark had achieved the requisite level of fame in the United States to merit protection

[under federal anti-dilution law] remains a question of fact that cannot be resolved in a motion to dismiss.").

### D.    In the Alternative, AlphaSights Requests Leave to Amend.

As shown above, the FAC adequately pleads both unfair competition and dilution under New York state law. However, if for any reason the Court finds otherwise, then AlphaSights respectfully moves for leave to amend the FAC under Federal Rule of Civil Procedure 15(a) to cure any deficiencies by further specifying the basis for AlphaSights' belief that Defendant has acted in bad faith and by augmenting its allegations regarding the strength of the ALPHASIGHTS Mark.

When, as here, a party seeks leave to amend a pleading before trial, "[t]he court should freely give leave when justice so required." Fed. R. Civ. P. 15(a)(2). "[T]he 'permissive standard' of Rule 15 'is consistent with [the] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams* v. *Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)). Accordingly, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co.* v. *Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). An amendment is prejudicial "when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *AEP Energy Servs.*, 626 F.3d at 725-26 (citation and internal quotation marks omitted).

At this stage of the litigation, prior to any discovery, an amendment to the FAC would not significantly delay these proceedings and would not prejudice Defendant. It also would not

22

be futile since AlphaSights could be even more specific than it already has been about

Defendant's bad faith or the strength of the ALPHASENSE Mark if the Court believes that

further allegations are necessary.

Accordingly, to the extent the Court grants Defendant's motion in whole or in part,

AlphaSights requests leave to replead.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant has not shown, and cannot show, that

AlphaSights has not sufficiently pled plausible claims for unfair competition and dilution under

New York law. Therefore, AlphaSights respectfully requests that Defendants' motion to dismiss

those claims be denied. In the alternative, if the Court finds that Defendant's motion has merit,

then AlphaSights respectfully requests leave to replead to address any deficiencies that the Court

identifies.

Dated: New York, New York
      April 7, 2025

Respectfully submitted,

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____
    James D. Weinberger (*jweinberger@fzlz.com*)
    Laura Popp-Rosenberg (*lpopp-rosenberg@fzlz.com*)
    Courtney B. Shier (*cshier@fzlz.com*) (*admitted pro hac vice*)
151 West 42nd Street, 17th Floor
New York, New York 10036
Phone: (212) 813-5900

*Attorneys for Plaintiff AlphaSights Ltd*

23

## <u>CERTIFICATE OF WORD COUNT (L.R. 7.1(C))</u>

Pursuant to Local Rule 7.1(c), I hereby certify that, excluding the caption, table of contents, table of authorities, signature block, and this certificate, the foregoing Memorandum of Law contains 7,043 words, counted using the Microsoft Word program used to prepare it. It therefore complies with the word-count limitation of Local Rule 7.1(c).

Dated: April 7, 2025

_____
Laura Popp-Rosenberg

4897-4511-2115, v. 1